## TOM POLLARD V. THE STATE.

### *No. 410.   Decided April 21.*

1. **Theft—Charge—Recent Possession—Presumption—Burden of Proof.**—On a trial for theft of a plow, where the court charged the jury, "Possession of recently stolen property is presumptive evidence of the guilt of the possessor, * * * and if an explanation is made, if it is natural, reasonable, and probably true, it operates to rebut the presumption of guilt arising from the possession of the property, and in such case, if such explanation be not shown to be false, further evidence of the defendant's guilt is required to warrant a conviction." *Held*, erroneous, and upon the weight of evidence, and threw the burden of proof on the accused to overcome the "presumption of guilt."

2. **Possession as Evidence.**—Possession of property recently stolen is but a circumstance to be considered in connection with other evidence in the case.

3. **Same—Presumption.**—To warrant a presumption of guilt from possession alone, such possession must be recent, personal, unexplained, and must involve a distinct and conscious assertion of ownership of the property by the accused.

4. **Same—Charge.**—Even where actual recent possession is shown and an explanation thereof has been given, it is not always proper nor correct to instruct the jury to convict if the account given by the accused of his possession is shown to be false. Such a charge may sometimes lead to a conviction, not because of guilt, but because the jury may have found the account given to be false. A conviction should not be made to depend solely upon the jury's believing defendant's explanation to be false, because this would hinge the case upon the falsity of his statement and not upon his guilt. Falsehood is not always conclusive evidence of guilt.

5. **Argument of Counsel—Instructions.**—On a trial for theft, an attorney for the prosecution, in argument to the jury, among other things, speaking of the kind of defense a party accused of theft would make, said: "Any man not a stranger in the county would have his neighbors to prove his character. Tom Pollard has lived in Dallas County for more than twenty years; he was raised in Dallas County; yet he has brought no witness to speak in behalf of his character." *Held:* Defendant not having put his character in evidence, the remarks were improper and prejudicial, and the court erred in refusing defendant's special instructions to the jury to disregard them.

6. **Theft—Receiving and Concealing Stolen Property—Charge—Principals.**—Where an indictment contained two counts—one for theft and one for receiving stolen property—it was error for the court to charge the jury, in effect, to convict defendant of theft if he was a principal in receiving and concealing stolen property; or that they could convict of receiving and concealing stolen property if he was shown to be a principal in the crime of theft.

7. **Counts, Charge as to.**—Where an indictment contains more than one count, the charge should submit the law pertinently as applicable to each count upon which the trial is had.

APPEAL from the County Court of Dallas. Tried below before Hon. T. F. NASH, County Judge.

The indictment contained two counts. The first, for theft of a plow of the value of $8, the property of Nathan Elliot; the second, for receiving said plow from some person to the grand jury unknown, and fraudulently concealing the same. Appellant was tried upon both

counts, but was convicted upon the second, his punishment being assessed at three months' imprisonment in the county jail and a pecuniary fine of $300.

The following statement of the case is taken from the brief of appellant's counsel:

W. B. Collier was the owner of a Bradley plow, and loaned it to Nathan Elliot, who left it in the field, from which place it was stolen. W. B. Collier found a Bradley plow concealed in the brush near a farm of defendant, and did not know that it was his plow until he went to Elliot's field and found the plow gone, from which fact he concluded the plow was his. Nathan Elliot would not swear that the plow recovered was the plow stolen, but only supposed so from the fact that the plow in the field was missing.

The evidence shows that the defendant was opening a clearing near W. B. Collier's, cutting and hauling the wood therefrom and selling the same to the railway company, and plowing the cleared ground; that the work was done by the employes of the defendant, who occupied a camp or log house upon the clearing; that the defendant lived near Lisbon, some miles distant therefrom, and was daily accustomed to come to the clearing, always riding to and from on horseback, and that the road usually travelled by the defendant and his employes led by Collier's house. After the discovery of the plow in the brush, W. B. Collier delegated one Williams to go where the plow was and to watch and see who got it, and W. B. Collier and Smith, armed with guns, together with Nathan Elliot and Bob Collier, took position at a fence near the road; that the defendant's wagon, driven by his employes, Brooks Pollard and one Dullivan, came down the road, the defendant riding on horseback behind the wagon; that W. B. Collier clambered upon the fence as the wagon passed, travelling in an ordinary walk, and saw a plow in the wagon, and said "My plow is in the wagon." The defendant replied, "I reckon not." The boys in the wagon then began to drive fast. Nathan Elliot said, "Stop them and put the plow out of the wagon." The defendant replied, "I have no strings on them." The wagon was then being driven rapidly. The defendant rode on down the road behind the wagon, and W. B. Collier, Williams, and Nathan Elliot pursued on foot and Bob Collier on horseback. The wagon was driven rapidly for several hundred yards nearly to the railway, where the road forked. The wagon took the right hand road, and the defendant, then being fifty or more yards behind it, riding in a trot, took the left hand road. Said two roads came together near Bob Hyatt's house, and about a mile from where the wagon passed Collier and others. Those pursuing on foot followed the wagon. Bob Collier on horseback, armed with Smith's gun, took the same road as the defendant.

Bob Collier, riding in a rapid gallop, passed the defendant on the road west of Hyatt's place, the defendant then riding in a trot. Bob Collier passed Hyatt's house and Bob Hyatt ahead of the defendant, the defendant then being some distance behind him. As Bob Collier came up to where Bob Hyatt was, the wagon was standing still about 150 yards distant from Hyatt's place. Brooks Pollard was in the wagon and Dullivan on the ground. Collier then saw the wagon start hurriedly and driven rapidly by Brooks Pollard and Dullivan. Bob Collier never heard the defendant halloo, "Hell! Yonder they come," or, "They are coming," or anything like it. Defendant did not say it. Collier went to where the wagon had stopped, and found the plow in the bushes and brought it out. Bob Hyatt came to where he was, and the defendant rode up to within a short distance.

Bob Hyatt saw the wagon being driven rapidly by Brooks Pollard and Dullivan, who passed his house and stopped in the road about 150 yards beyond his house, and saw them throw a plow out of the wagon into the bushes, and testified that about the time the wagon stopped the defendant rode up rapidly on horseback on the west side of his place, and when he reached the northwest corner of his place, the wagon then being stopped in the road, he hallooed to Brooks Pollard and Dullivan, "What in the hell did you stop there for? Yonder they come; throw the plow out of the wagon." A few minutes after Bob Collier rode up, following the defendant on horseback on the west side of the field, passed defendant, and came to the place where the plow had been thrown out.

Hyatt further testified, that when defendant hallooed to Brooks Pollard and Dullivan, Bob Collier was in hearing distance of the defendant. W. B. Collier, Nathan Elliot, Bob Hyatt, and Bob Collier all congregated at the place where the plow was found after being thrown from the wagon, and the defendant was near on his horse. The two Colliers talked roughly to him and had their guns, and accused him of stealing the plow, and that he need not deny it. The defendant denied the theft or any knowledge of the plow being in the wagon, and said that if anybody had put it into the wagon the boys had done it, and that without his knowledge or consent. He denied any knowledge of or connection with the plow.

Bob Hyatt further testified, that when the defendant came up to where Collier was with the plow, Collier said to him, "Why didn't you stop the wagon and throw the plow out?" The defendant replied, that he did not know the plow was in the wagon, and knew nothing about it; that he did not load the wagon, and did not know that any plow was in the wagon except his own; and that Brooks Pollard and Dullivan had loaded the wagon, and that he had never seen the plow and did not know that it was in the wagon.

The proof showed that the defendant had cleared and plowed some land at his clearing; and at the time the wagon passed Collier and others, and the pursuit by them, that the defendant had sold his clearing to Ben Plew, and was removing his plows, bedding, etc., from the camp. .

By Ben Plew it was shown, that he purchased said clearing, and at the date that the plow was thrown out of the wagon by Brooks Pollard and Dullivan, that defendant was moving his plows, camp fixtures, etc., from the clearing, and on that date surrendered possession of the clearing to Plew, and that defendant had several plows at the clearing which were moved in the wagon at that time.

*Kearby & Muse*, for appellant.—1. The evidence is insufficient to establish the ownership in Elliot as alleged, or to identify the plow recovered as the one alleged to have been stolen from him; and fails to show appellant in possession of the plow, or his guilty connection therewith; or to establish the allegation that defendant received the same from some persons to the grand jury unknown.

2. The testimony of W. B. Collier and Nathan Elliot does not identify the stolen plow nor establish the ownership as alleged.

3. The testimony fails to show the defendant in possession of the alleged stolen plow, or any guilty connection therewith on his part.

4. The explanation of the defendant upon being charged with the theft of the plow was reasonable, natural, and probably true, and was unrebutted by the State. The evidence does not support the conviction, and the court erred in not so instructing the jury as requested by the defendant. Heskew v. The State, 17 Texas Crim. App., 166; Lewis v. The State, Id., 141, 142; Castellow v. The State, 15 Texas Crim. App., 551.

5. The court erred in permitting the assistant county attorney, in his argument to the jury, over the defendant's objection, to discuss the failure of the defendant to put his reputation and character for honesty and fair dealing in issue, which argument was probably prejudicial and hurtful to the defendant; and further erred in refusing the defendant's requested instruction directing the jury to disregard such arguments.

The defendant's reputation was not in issue. Said argument was unwarranted, probably prejudicial, and excepted to, and a special charge controlling same requested and refused by the court, to which exception was reserved, and which refusal constitutes reversible error.

6. The court erroneously instructed the jury upon the law of recent possession of stolen property and explanation, in that the same was upon the weight of the testimony, and made presumptive evidence of guilt conclusive of guilt, as matter of law, in the absence of reasonable explanation, and erroneously refused the defendant's requested charge upon that issue.

7. In the application of the law of principals the court in the charge erroneously instructed, in effect, that if the defendant neither took nor received the plow, but aided those who did take, receive, or conceal, to find him guilty, in that conviction for receiving was warrant without knowledge of the theft, and conviction upon either count was warranted, upon proof of the other.

The charge erroneously authorized conviction for receiving and concealing without the knowledge of the defendant that the plow had been stolen; and upon proof of complicity in the theft warranted conviction for receiving and concealing, and vice versa.

8. The appellant, in emphasis of the error of the charge of the court upon the presumption of guilt arising from the recent possession of stolen property, and under the charge, as matter of law, made prima facie evidence of guilt, cites the following authorities, to wit:

In the case of Thompson v. The State, 43 Texas, 268, 270–273, the court reversed the case because of the following charge of the trial court, viz: "Possession of property which has been recently stolen is prima facie evidence of theft, and it devolves upon the defendant to explain such possession so as to rebut that presumption, or so as to raise a reasonable doubt in your minds as to his guilt." The Supreme Court said: "Such charge reverses the rule as to the burden of proof, and transfers it from the State to the defendant. The charge in effect tells the jury, if defendant is shown to have been in possession of the stolen property they should find a verdict against him, unless he could rebut the presumption, etc. While the true rule is, that the possession of property recently stolen is evidence against the accused, which, like all other evidence, is to be taken and considered by the jury in connection with the other testimony in the case. And unless the jury, on consideration of it in connection with the other evidence before them, are satisfied of the guilt of the accused, beyond all reasonable doubt, they should acquit him."

The case of Williams v. The State, 11 Texas Court of Appeals, 276–279, cites a number of authorities sustaining the above principle, and holds unqualifiedly that recent possession of stolen property without explanation is sufficient to sustain a conviction as a matter of fact, but that such rule can not be embodied in the charge as matter of law, so as to constitute recent possession prima facie evidence of guilt.

In the case of Lehman v. The State, 18 Texas Court of Appeals, 174, the court, discussing the presumption of guilt from recent possession and failure of explanation, announces the rule that the "same will support conviction without further proof." This rule but announces the probative force of the evidence upon the issue of fact, as shown by the further language of the court, viz: "But even in such case, whilst the law would authorize the inference and presumption of guilt, such presumption or inference is not a mere legal one, but is one of fact to be

found by the jury, and the court should in no instance charge the conclusiveness of such presumption or inference, but should submit them as facts to be found by the jury." Citing Thomas v. The State, 43 Texas, 628.

In the Lehman case a full discussion of the doctrine is to be found. In the case of Yates v. The State, 37 Texas, 202, the Supreme Court sustains the same principle here contended for.

*R. L. Henry*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Conviction was had in this case for receiving and concealing stolen property. Defendant was not in actual possession of the plow. It was found in his wagon, which was being driven by Brooks Pollard and Dullivan. Defendant denied theft of the plow, or any knowledge of the fact that a stolen plow was in the wagon. He was at the time riding fifteen or twenty steps in rear of the wagon, which was being driven along the public road. In this connection the court charged the jury: "Possession of recently stolen property is presumptive evidence of the guilt of the possessor, but such presumption may be strong or weak according to the circumstances of the case, and if an explanation is made, if it is natural, reasonable, and probably true, it operates to rebut the presumption of guilt arising from the possession of the property, and in such case, if such explanation be not shown to be false, further evidence of the defendant's guilt is required to warrant conviction."

This charge was excepted to upon several grounds. It was clearly erroneous and upon the weight of the evidence. Possession is but a circumstance to be considered by the jury along with the other evidence in the case. To warrant a presumption of guilt from possession alone, such possession must be recent, personal, unexplained, and must involve a distinct and conscious assertion of property by the accused. While an unexplained possession of property recently stolen may justify a verdict, yet the court would not be authorized to order a conviction, or to charge them, as a presumption from the evidence, that he is guilty. And to authorize the conviction under such state of case, the unexplained *possession* is a sine qua non.

Again, the "reasonable account" is dependent upon the possession of the property. If there be no possession there should be no explanation of possession, for there is nothing to explain. Under this state of case it would not be proper to submit the question of reasonable account of the possession of property recently stolen, because the issue is not presented by the evidence. It is not a part of the case. It is not always proper to instruct the jury in regard to the account given by the accused of his possession of the stolen property, even when he is in actual possession at the time of making the statement. Such

charge may lead to a conviction, not because of guilt, but because the jury have found the account given to be false. An apparently reasonable account may be proved false, while, an apparently unreasonable account may be true. One may be more conclusive of innocence than the other is of guilt. They are questions of fact to be considered with the other circumstances of the case. The charge was not only upon the weight of the testimony, but threw the burden of proof on the accused to overcome the "presumption of guilt." Legal presumption of innocence and "the reasonable doubt" obtain in favor of and not against the defendant. The State must overcome both in order to secure a legal conviction.

A theft being shown, and the accused being found in possession of the property stolen recently thereafter, gives an account of his possession; such an account then becomes a fact or circumstance in the case, to be weighed by the jury in arriving at their verdict. But it does not follow that a conviction should be had simply because his statement may not be believed by the jury, for this would hinge the case upon the falsity of his statement, and not upon his guilt. He should be proved to be guilty beyond a reasonable doubt. Falsehood is not necessarily always conclusive evidence of guilty possession of property recently stolen.

During the argument one of the State's counsel remarked to the jury: "If any one of you, or any respectable citizen of this county, was charged with crime and put upon trial, the first thing you would do, the first thing any honest citizen would do, would be to bring before the jury his neighbors and friends and prove before them his reputation and character for fair dealing and honesty, and show how he stood before the community in which he lived; any man not a stranger in the county would have his neighbors to show his character. Tom Pollard has lived in Dallas County for more than twenty years; he was raised in Dallas County; yet he has brought no witness to speak in his behalf of his character." Exceptions were reserved to this line of argument, because defendant had not placed his character in issue, and there were no facts in the record to warrant the argument. The court was not only requested to require counsel to desist from such comments and instruct the jury to disregard same, but special charges were prepared by defendant and asked to be given in charge to the jury instructing them to discard the remarks, and these were refused by the court. The argument was not only improper, and unwarranted by the testimony, but evidently prejudicial to defendant. The court should have given the requested instructions. Willson's Crim. Proc., sec. 2321.

The indictment contained two counts: The first charging theft; the second, receiving and concealing stolen property. In applying the law of principals to the evidence the court charged the jury: "And

if you find and believe from the evidence that the defendant Tom Pollard neither took the plow under such circumstances as to constitute theft, nor actually received or concealed the same after taken, but was actually present and knowing the unlawful intent of others who did so take, receive, or conceal said plow, and aided said parties so taking, receiving, or concealing said plow, by acts, or encouraged them by words or gestures, you will find him guilty." A bill of exceptions was reserved to this charge. "Find him guilty" of which offense? The charge is, to say the least of it, confused and misleading. Under the terms of it the jury were authorized to convict defendant of theft if he was a principal to the crime of receiving and concealing stolen property, or they could convict of receiving and concealing stolen property if he was shown to be a principal to the crime of theft. This is not the law. He can only be convicted of the offense of which the evidence shows him guilty. The charge should directly and pertinently apply the law applicable to the case, and where more than one count is submitted by the court for the consideration of the jury it should be pertinently applied to each count.

The other questions will hardly arise upon another trial, and we pretermit a discussion of them.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.