**Morris ROBERTS, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–83–077–CR.**

Court of Appeals of Texas,
Fort Worth.

May 10, 1984.

Joanne M. Shipley, Denton, for appellant.

Jerry Cobb, Dist. Atty., Beverly Fisher, Asst. Dist. Atty., Denton, for the State.

Before JORDAN, BURDOCK and JOE SPURLOCK, II, JJ.

## OPINION ON COURT'S OWN MOTION FOR REHEARING

JOE SPURLOCK, II, Justice.

Appellant, Morris Roberts, was convicted by a jury of the offense of burglary of a habitation. TEX. PENAL CODE ANN. § 30.02 (Vernon 1974). The jury assessed Roberts a sentence of eight years confinement in the Texas Department of Corrections and a fine of five thousand dollars ($5,000.00).

This court previously affirmed the judgment in an opinion issued March 21, 1984. Roberts filed a motion for rehearing which basically reurged his points on appeal. We overrule his motion, but are convinced that our prior opinion was in part in error. On this Court's own motion, our prior opinion and judgment are withdrawn and we substitute in its place this opinion. As we find reversible error in the charge given to the jury on the trial of this case, we order that the judgment below be reversed.

Roberts alleged ten grounds of error. Grounds of error one and two complain of the admission of evidence of his oral custodial statement and of the trial court's determination that this statement was voluntarily made. Grounds of error three, four, five, six, nine, and ten, complain of the trial court's instructions to the jury. Ground of error seven complains that the trial court erred in excluding evidence that a State's witness had received a probated sentence. Roberts contends such evidence was admissible to show bias, interest and motive of the witness. Ground of error eight challenges the sufficiency of the evidence. The facts of the case are as follows.

On December 10, 1982, at approximately 10:00 a.m., Amin Damra left his apartment, located in Denton, Denton County, Texas, to attend classes at North Texas State University. Upon his return at approximately 3:00 p.m., Damra discovered that the screen on the back window of his apart-

ment had been removed and numerous items of personal property inside the apartment had been stolen. Among the items taken were a Yashica 35MM camera, an engraved pen, a key case with plastic Jordanian money attached, a wallet and various personal papers.

Between 2:00 and 5:00 on the afternoon of December 10, 1982, Burr Wilcox, a pawn broker employed at Denton Jewelry and Loan, accepted the pawn of a Yashica 35MM camera from a man he knew to be Morris Roberts, for $25.00. A copy of the pawn slip, bearing identifying information taken from Roberts at the time of the transaction, as well as Roberts' signature, was subsequently submitted to the City of Denton Police Department.

On the afternoon of December 29, 1982, Roberts was stopped by David Stewart, an investigator with the Denton Police Department, for the commission of three traffic offenses. Roberts was taken into custody and transported to the Denton Police Department. Upon arrival at the Police Department, Officer Stewart verbally advised Roberts of his rights and had Roberts sign a form indicating that he had been read his rights and understood them. At the time of his arrest, Roberts had in his possession a brown leather key case with assorted keys and "Jordanian-type money, plastic money" attached to it. Roberts attempted to release the keys and the car he was driving to his passenger, Herman Goldsmith, but was not permitted to do so since neither Roberts nor Goldsmith was the registered owner of the car.

On December 29, 1982, subsequent to Roberts' arrest, Detective Dan McCormick, of the Denton Police Department approached Roberts, while he was still in custody, advised him of his *"Miranda* [1] warnings," and informed him that he was investigating the Damra burglary and showed him the pawn ticket from Denton Jewelry and Loan. At that time, according to Officer McCormick, Roberts stated that he bought the camera in question from a white dude in a motel parking lot on De-

cember 27th. When Roberts was shown that the pawn slip was dated December 10th, he refused to respond further. This statement was not reduced to writing and was not recorded.

On December 30, 1982, a white 1977 Grand Prix was towed from a muddy field near the place of Roberts' arrest and impounded by the City of Denton Police Department. The car was registered to Roberts at an address he shared with a girlfriend approximately 120 steps from the Damra apartment. Keys, on the case which was recovered from Roberts the day before, were used to enter the Grand Prix for an inventory search. The contents of the car included, among other things, an engraved pen.

On the 5th or 6th of January, 1983, Amin Damra, accompanied by Officer McCormick, went to the Denton Jewelry and Loan and identified the camera pawned by Roberts as the one taken in the burglary of his apartment. On January 5, 1983, Amin Damra went to the Denton Police Department and identified the key case, recovered from Roberts on the day of his arrest, and the engraved pen, recovered from Roberts' car, as property also taken in the burglary.

Morris Roberts was indicted for burglary of the habitation of Amin Damra and, upon a plea of not guilty, was tried before a jury. At trial, the evidence presented by the State, in addition to the testimony of Amin Damra, Burr Wilcox, David Stewart and Dan McCormick, included the testimony of Gregory Paul Reed.

Reed testified that he was with Roberts on December 10, 1982, that he saw a camera in Roberts' car, and that he remained in the car while Roberts went into a pawn shop with the camera and returned with $25.00. Reed further testified that he observed a checkbook in Roberts' car on that date and that the name on the checkbook was something like Alan Alamama (phonetic spelling). Reed testified that he had not committed the Damra burglary on December 10, 1982.

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct.

1602, 16 L.Ed.2d 694 (1966).

Roberts testified at trial that he had bought the Yashica camera on December 10, 1982, from Reed for $10.00 and pawned it for $25.00; that he had received the key case and the pen as gifts from Reed on that date; and that he never entered or committed a burglary of Amin Damra's residence. He further testified that the key case was not on his person at the time of his arrest but was locked inside the Grand Prix which was stuck in the mud. Roberts testified on cross-examination that he did not state to McCormick that he had obtained the camera from a white dude on December 27, 1982.

McCormick testified that Roberts did make the statement regarding the camera and further that Roberts' reputation for truth and veracity was bad and not such that would entitle him to belief under oath. Walter Hocheim also testified that Roberts' reputation for truth and veracity was bad.

The jury returned a verdict of guilty to the charge of burglary of a habitation and assessed Roberts' punishment at eight years confinement in the Texas Department of Corrections and a fine of five thousand dollars ($5,000.00).

Roberts' first ground of error contends that the trial court erred in admitting the oral statement allegedly made during custodial interrogation in that the statutory provisions governing when a statement may be used were not met. TEX.CODE CRIM.PROC.ANN. art. 38.22 (Vernon 1979). This ground of error raises an issue of first impression in that no other Court has been called on to interpret the proper application of art. 38.22 as currently enacted.

Roberts contends that TEX.CODE CRIM.PROC.ANN. art. 38.22, § 3 (Vernon Supp.1984), controls the admissibility of the oral statement which was allegedly made in response to custodial interrogation, and that the requirements of that section were not met, therefore the statement was not admissible for any purpose. The State argues that the statement was properly admissible for impeachment purposes under

the provision of TEX.CODE CRIM.PROC. ANN. art. 38.22, § 5 (Vernon 1979).

At trial, as stated above, Roberts testified that he bought the camera from Gregory Reed on December 10, 1982. Roberts' custodial statement, regarding the purchase of the camera from a white dude on December 27, 1982, was offered solely for the purpose of impeaching this testimony by Roberts. Roberts, in contending that art. 38.22, § 3, is the controlling section, relies heavily on the Texas Court of Criminal Appeals decision in *Alfaro v. State*, 638 S.W.2d 891 (Tex.Cr.App.1982).

In *Alfaro*, the Court was faced with the task of construing art. 38.22, as it existed prior to the 1981 amendments to that article. The Court limited its holding by specifically stating, "we express no opinion concerning the interplay between Sections 3 and 5 as currently enacted." *Alfaro supra*, at 901, fn. 2. Therefore, we do not find *Alfaro* to be a controlling influence in the present case. Roberts also cites *Prescott v. State*, 642 S.W.2d 502 (Tex.Cr.App. 1982); *Jackson v. State*, 548 S.W.2d 901 (Tex.Cr.App.1977); and *McBride v. State*, 506 S.W.2d 887 (Tex.Cr.App.1974), as supporting the contention that a custodial statement may not be used even for impeachment purposes if the requirements of art. 38.22 are not met. The court, in each of these cases, was faced with applying the article as it existed prior to the 1981 amendments and the cases are therefore distinguishable from the present case. At this point, it is necessary to determine the proper construction to be given to art. 38.-22.

Prior to the amendment of 1981, art. 38.22, § 3 provided in part:

Sec. 3. (a) An oral statement of an accused made as a result of custodial interrogation is admissible against the accused in a criminal proceeding for the purpose of impeachment only and when:
· · ·

The article then went on to set out the requirements for the use of a custodial statement for impeachment purposes. As currently enacted, section 3 makes no ref-

erence to the use of custodial statements for impeachment purposes.

Article 38.22, § 3, provides:

Sec. 3. (a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

(1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;

(2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

(3) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate, has not been altered, and reflects that the accused was advised before the interrogation that the interrogation will be recorded; and

(4) all voices on the recording are identified.

(b) Every electronic recording of any statement made by an accused during a custodial interrogation must be preserved until such time as the defendant's conviction for any offense relating thereto is final, all direct appeals therefrom are exhausted, or the prosecution of such offenses is barred by law.

(c) Subsection (a) of this section shall not apply to any statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed.

(d) If the accused is a deaf person, the accused's statement under Section 2 or Section 3(a) of this article is not admissible against the accused unless the warning in Section 2 of this article is interpreted to the deaf person by an interpret-er who is qualified and sworn as provided in Article 38.31 of this code.

Article 38.22, § 5, provides:

Sec. 5. Nothing in this article precludes the admission of a statement made by the accused in open court at his trial, before a grand jury or at an examining trial in compliance with - Articles 16.03 and 16.04 of this code, or of a statement that is the res gestae of the arrest or of the offense, or of a statement that does not stem from custodial interrogation, or of a voluntary statement, whether or not the result of custodial interrogation that has a bearing upon the credibility of the accused as a witness, or of any other statement that may be admissible under law.

Roberts would have us construe § 3(a) as requiring that before an oral statement of an accused, made as a result of custodial interrogation, can be admissible for any purpose, it must satisfy the requirements of § 3(a). The State urges that by deleting the language in § 3 which referred to the use of custodial statements "for the purpose of impeachment" and leaving the language of § 5 intact, the legislature purposely intended to permit the admission of voluntary custodial statements for impeachment of the accused, without regard to compliance with the provision of § 3(a). In effect, the State is arguing that the present statute adopts the rule of *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). We agree with the construction of art. 38.22 offered by the State.

The Supreme Court in *Harris*, held that prior inconsistent custodial statements could be used to impeach the testimony of an accused even though the statements were inadmissible in the State's case in chief because of a failure to comply with *Miranda*, as long as the evidence satisfied legal standards for trustworthiness. The Supreme Court stated, "[i]t does not follow from *Miranda*, that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that the trustworthiness of the evidence satisfies legal standards."

*Harris, supra* at 224, 91 S.Ct. at 645. Until now, the rule in *Harris* has not been the law of this state.

This state has long recognized that "[t]he prohibition against the use of oral confessions is a matter of a state statute." *Butler v. State,* 493 S.W.2d 190, 191 (Tex.Cr. App.1973). For many years, "the law in Texas has been that a confession, inadmissible in the State's case in chief, is not admissible for the purpose of impeaching an accused as a witness in his own behalf." *Butler, supra* at 193. The Court in *Butler* recognized that the State Legislature "has made the statutory determination that testimony surrounding oral confessions made while in custody or confinement is unreliable with certain statutory exceptions." *Butler, supra* at 198. In declining to embrace the *Harris* rationale, the court went on to state that "[t]o permit testimony as to an oral confession (not within any statutory exception) for impeachment would undermine the legislative determination expressed in Article 38.22, supra." *Butler, supra* at 198.

The Court in *Alfaro,* was faced with a different question in that there was an apparent conflict between the provisions of §§ 3 and 5 of art. 38.22. Section 3, of the statute construed by the *Alfaro* court, directly related to the admissibility of custodial statements for impeachment purposes upon the meeting of certain requirements. This was in conflict with the applicable part of § 5 which allowed the admission of a "voluntary statement, whether or not the result of custodial interrogation," that had "a bearing upon the credibility of the accused as a witness." Article 38.22, § 5.

The *Alfaro* court, as had the court in *Butler,* recognized that "oral statements made by the accused while in custody have long been regarded by the legislature as generally unreliable and, therefore, inadmissible for any purpose." *Alfaro, supra* at 898. The court then analyzed the legislative history behind art. 38.22 and determined that such legislative history suggested that "oral custodial statements could be used only for impeachment and only when the six specific requirements of Section 3 were met." *Alfaro, supra* at 900. The court then held that:

[A]s amended in 1977, V.A.C.C.P. Article 38.22, Section 3, controls over Section 5. An oral statement made by the accused as a result of custodial interrogation during the effective dates of that statute (August 29, 1977 through August 31, 1981) is admissible only for impeachment purposes and only when the statement is shown to comply with the six specific requirements contained in Section 3. V.A.C.C.P., Article 38.22, Section 5, applies to statements other than oral custodial statements made by the accused. *Alfaro, supra* at 900, 901 [footnotes omitted.]

As stated above, § 3 was amended by the 67th Legislature in 1981, removing from that section all references to the use of custodial statements for the purpose of impeachment. This in effect, resolved the conflict between § 3 and § 5 which was addressed by the court in *Alfaro.* The article as amended leaves only § 5 as applying to the use of custodial statements for impeachment purposes.

■ By exploring the legislative history behind the 1981 amendments, it becomes clear that the legislature intended to adopt the rule of *Harris,* as the law of this state. In the pertinent part of a message from the Governor to the Senate concerning an anticrime package before the Senate, it is stated that the Bill amending art. 38.22, would "bring Texas in line with other states and the federal judicial system in allowing oral confessions." S.J. of Tex. 67th Leg., Reg. Sess. 127, 128 (1981). In light of this, it is apparent that the legislature has changed the long standing law of this state that a custodial statement, if not admissible in the case in chief, is not admissible for impeachment purposes. The use of custodial statements as direct evidence in the case in chief is now covered by TEX.CODE CRIM. PROC.ANN. art. 38.22, § 3(a) (Vernon Supp.1984). The use of custodial statements for impeachment purposes only is covered by TEX.CODE CRIM.PROC.ANN.

art. 38.22, § 5 (Vernon 1979). Therefore, in the present case, the admissibility of Roberts' statement for impeachment purposes is to be judged by the requirements of art. 38.22, § 5.

■ Section 5 allows the admission of a *"voluntary statement,* whether or not the result of custodial interrogation, *that has a bearing upon the credibility of the accused as a witness".* Article 38.22, § 5. (Emphasis added.) Therefore, if Roberts' oral custodial statement was voluntarily made, then it was admissible for impeachment purposes under art. 38.22, § 5.

Roberts, in his second ground of error, contends that the trial court erred in admitting his custodial statement when there was no showing that the defendant had knowingly, voluntarily and intelligently given up his constitutional right to remain silent and his other rights under the so-called *Miranda* Rule. Roberts. also contends that the trial court's failure to make specific findings of fact as required by TEX.CODE CRIM.PROC.ANN. art. 38.22, § 6 (Vernon 1979), was reversible error.

Article 38.22 § 6, provides in part:

Sec. 6. In all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions. If the statement has been found to have been voluntarily made and held admissible as a matter of law and fact by the court in a hearing in the absence of the jury, the court must enter an order stating its conclusion as to whether or not the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based, which order shall be filed among the papers of the cause.

The trial court below, in compliance with *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) and art. 38.22, § 6 conducted a hearing, in the absence of the jury, inquiring into the voluntariness of the custodial statement. At the hearing, Officer David Stewart testified that he is-

sued Roberts oral warnings upon arrival at the Denton Police Department on December 29, 1982. After explaining his rights, Officer Stewart asked Roberts if he understood them. Roberts replied that he did understand them. Officer Stewart then asked Roberts if he wished to waive his rights. Roberts replied that he did not wish to waive his rights. Officer Stewart required Roberts to sign a form which stated that he had been given his rights, that he understood his rights and that he did not wish to waive his rights.

Subsequent to that time, while Roberts was still in custody on the 29th of December, 1982, Roberts was approached by Officer Dan McCormick, who was investigating the Amin Damra burglary. Officer McCormick testified that, "I advised him of his *Miranda* warnings." Officer McCormick then asked Roberts if he understood his rights. Roberts didn't respond. Officer McCormick restated each of the warnings and asked Roberts after each warning, if he understood. Roberts did not respond. He did not request the presence of a lawyer, nor request that the interview be terminated. Officer McCormick proceeded to inform Roberts that he was investigating a burglary where a camera had been taken and that he wanted to know about the camera that Roberts had pawned. Officer McCormick showed Roberts the pawn ticket. At that time, Roberts said that he had bought the camera from a white dude in a motel parking lot on December 27, 1982. When Officer McCormick pointed out the date on the pawn ticket as being December 10, 1982, Roberts refused to respond to further questions. At the conclusion of the hearing, the trial judge determined that Roberts' custodial statement was admissible based on a finding that the statement was voluntary and met the requirements of the Constitution of the United States and the laws of the State of Texas.

[3, 4] The Texas Court of Criminal Appeals has held that "[t]he determination of whether a confession is voluntary must be based upon examination of the totality of

the circumstances surrounding its acquisition." *Barton v. State*, 605 S.W.2d 605, 607 (Tex.Cr.App.1980). At a hearing on the voluntariness of a custodial statement, the trial judge is the trier of fact and "the exclusive judge of credibility of witnesses as well as the weight to be afforded their testimony.... Appellate challenges to the trial court's determinations of fact or applications of law should be directed to whether the trial court abused its discretion." *Barton, supra* at 607. The court in *Taylor v. State*, 630 S.W.2d 824, 826 (Tex.App.— Houston [1st Dist.] 1982, no pet.), held that "[t]he general rule is that the trial judge's findings in a hearing on the issue of the voluntariness of a confession will not be overturned when there is evidence to support his findings, unless there is a showing of an abuse of discretion."

In the present case, we find that there is evidence to support the trial judge's findings that the statement was freely and voluntarily made and that the statement constituted a knowing, voluntary and intentional waiver of the defendant's rights. An examination of the record does not disclose an abuse of discretion on the part of the trial judge in arriving at this finding of fact.

Roberts' contention that it was reversible error for the trial court to fail to make specific findings of fact as required by art. 38.22, § 6, is without merit. The proper remedy, in such a situation, is for the appeal to be abated so that the record can be supplemented with such findings of fact as are required. *Bass v. State*, 626 S.W.2d 769, 775 (Tex.Cr.App.1982). Such an abatement has taken place and the record was supplemented. Based on this we overrule Roberts' first and second grounds of error.

Before addressing Roberts' third ground of error, we find it necessary to dispose of grounds of error four and five. This is due to their influence on our disposition of ground of error three.

In ground of error four, Roberts contends that the trial court erred in failing to give a circumstantial evidence instruction. We may summarily dispose of this ground of error by relying on the Texas Court of Criminal Appeals' holding in *Hankins v. State*, 646 S.W.2d 191 (Tex.Cr.App.1983).

The court in *Hankins* found that a jury instruction on circumstantial evidence "serves only to distract jurors from examining the proper standard of proof as the primary focus of their deliberations." *Hankins, supra* at 199. Therefore, an instruction on circumstantial evidence is not required where the jury is "properly instructed on the state's burden of proof, the presumption of innocence and the requirement that an acquittal be entered if there exists a reasonable doubt as to appellant's guilt." *Hankins, supra* at 199. We find that the jury was so instructed in the present case. Roberts' ground of error four is overruled.

Roberts, in his fifth ground of error, contends the trial court erred in failing to instruct the jury on the definition of reasonable doubt. This state has long recognized that the term "reasonable doubt" should not be defined by the trial court in its charge to the jury. *See Young v. State*, 648 S.W.2d 2, 3 (Tex.Cr.App.1983); *Whitson v. State*, 495 S.W.2d 944 (Tex.Cr.App. 1973); *Pigg v. State*, 162 Tex.Cr.R. 521, 287 S.W.2d 673 (1956). Roberts' ground of error five is overruled.

We now return to Roberts' ground of error three. He complains of the instruction given to the jury, in the charge of the court, concerning the presumption of guilt arising from the defendant's possession of stolen property. The complained of jury instruction is as follows:

A presumption of a defendant's guilt of a burglary sufficient to sustain a conviction may arise from a defendant's possession of property stolen or taken in a recent burglary. However, in the prosecution for burglary, to warrant such an inference or presumption of guilt from the circumstances of possession alone, such possession must be personal, must be recent, must be unexplained, and must involve a distinct and conscious as-

sertion of right to the property by a defendant.

Roberts contends that by instructing the jury in this manner, the court was commenting on the weight of the evidence as well as singling out a solitary fact and charging upon it. Roberts also claims that the instruction was misleading to the jury and prejudicial to the defendant. We agree.

The Texas Court of Criminal Appeals, in *Acy v. State*, 618 S.W.2d 362, 365 (Tex. Crim.App.1981) recognized that the unexplained possession of recently stolen property "is not positive evidence of burglary or theft, but is merely a circumstance to be considered with other evidence in determining guilt." The Court then held that "when proof of theft is supported only by the unexplained possession of property recently stolen, a defendant is entitled to a charge on the law of circumstantial evidence...." *Acy, supra* at 365. However, as stated above, the Texas Court of Criminal Appeals in *Hankins, supra* determined that it was improper for a trial court to charge the jury on circumstantial evidence, even though a definitional instruction on the term "reasonable doubt" is not required by this state. *Hankins, supra* at 199, fn. 1.

In reaching this conclusion, the court determined that the rule should be that circumstantial evidence alone may be sufficient in law to justify a conviction "only if the *inferences* arising therefrom prove the fact in question beyond a reasonable doubt. That is, the jury should consider the totality of the direct or circumstantial evidence and the *reasonable inferences which may be drawn therefrom,* in determining whether it was sufficient to establish guilt beyond a reasonable doubt." *Hankins, supra* at 199. (Emphasis added.) The language in *Hankins,* however provides no authority for the trial court to instruct the jury on the application or use of the circumstantial evidence relied on by the State in its case in chief as raising a presumption or inference of the defendant's guilt.

TEX.CODE CRIM.PROC.ANN. art. 36.-14 (Vernon Supp.1984), states that "[i]n each felony case .... tried in a court of record, the judge shall, before the argument begins, deliver to the jury, ... a written charge distinctly setting forth the law applicable to the case; ..." It is therefore "incumbent on the trial court to charge the jury fully and affirmatively on the law applicable to every issue raised by the evidence, ..." *Kibbe v. State,* 133 Tex.Cr.R. 494, 112 S.W.2d 733, 734 (1938). We do not believe this mandates a charge on "presumption or inference" of guilt.

The Texas Court of Criminal Appeals in *Scott v. State,* 36 S.W. 276, 277 (Tex.Cr. App.1896), held:

As a matter of law, the jury might be authorized to convict, in a proper case, upon the fact of possession of recently stolen property, standing alone; but a charge telling the jury that they could do so would be a charge upon the weight of the testimony, and, besides, would be singling out a solitary fact in a case, and charging upon that.

In our first opinion we distinguished the case on appeal from *Scott.* We held that the charge given directly parallels the language used by the Court of Criminal Appeals in many prior opinions. However, for reasons discussed hereafter we now find such language was intended as a guide for appellate consideration only to determine the sufficiency of the evidence to sustain a conviction, and is not to be given in a charge to the jury.

■ We previously overruled Roberts' third, ninth, and tenth grounds of error. These grounds of error are closely related. Roberts' ninth ground of error contends that the trial court violated his constitutional rights under the Fifth and Fourteenth Amendments by instructing the jury that a presumption of a defendant's guilt of a burglary sufficient to sustain a conviction may arise from a defendant's possession of property stolen or taken in a recent burglary. Roberts' tenth ground of error contends that by instructing the jury that the defendant's guilt of a burglary may be

presumed from his possession of stolen property, the court violated the defendant's rights to due process under the Fifth and Fourteenth Amendments. We agree.

We have examined a long, disjointed line of Texas cases dealing with the issue of "inference of guilt" and/or "presumption of guilt", as it applies in a case where a defendant is in possession of recently stolen property.[2] We have found no controlling case, nor other authority defining the proper charge, if any, to give the jury regarding such "presumption or inference" and its permissive limits of logical application. We strongly feel there is no controlling case or law because there is no suitable charge. There are cases where the defendant requested such a charge,[3] but here the appellant objected to such an instruction.

■ At issue is the philosophical concept of American jurisprudence concerning guilt or innocence. As Americans we believe our standard of justice to be the best in the world. We are guaranteed as citizens that we shall not be found guilty except on credible proof beyond a reasonable doubt. When the court endeavors to instruct the jury upon permissible inferenc-

es that they may draw from the evidence before them, it has interjected an imbalance into our adversial system. When the finder of fact is instructed that it may presume or infer guilt (beyond a reasonable doubt) from certain facts alone, if found, that instruction is inescapably a comment on the weight of the evidence.

Many cases have discussed the problem inherent in giving such a charge, and yet, preserving the "presumption of innocence" to which the defendant is entitled.[4] The difficulty in giving such a charge is that any comment on the permissible minimum proof necessary for a jury to find, to believe, or presume guilt interferes with the careful balance that must be maintained to insure a fair trial. We must not forget the State must prove *each* element beyond a reasonable doubt, and the defendant is "presumed" innocent until the State so proves his guilt. For the court to give an instruction as was done here, is to tell the jury to convict, if the defendant makes no explanation. It removes from the defendant any hope he may have to remain silent and require the State to provide solely the evidence of his guilt.

2.  *Walden v. State,* 165 Tex.Cr.R. 196, 305 S.W.2d 354 (1957). (Conviction affirmed, note Judge Davidson's dissent.);
   *Randolph v. State,* 505 S.W.2d 845 (Tex.Cr.App. 1974). (Conviction reversed, note Judge Morrison's dissent.);
   *Rodriguez v. State,* 549 S.W.2d 747 (Tex.Cr.App. 1977). (Judge, then commissioner, Dalley used the precise language given in the charge used in this case on appeal; note the listing of authority for the language used.);
   *McLemore v. State,* 638 S.W.2d 211 (Tex.App.— Houston [1st Dist.] 1982). (Chief Justice Evans reaffirmed precisely the language of *Rodriguez*.);
   *Hardesty v. State,* 656 S.W.2d 73 (Tex.Cr.App. 1983). (Judge Miller discusses the misuse of "presumption of guilt" and concludes at best the trier of fact may draw only a "permissible inference" and that is but a "circumstance of guilt". See Judge Davidson's 1957 dissent in *Walden, supra,* 305 S.W.2d at 357.).

3.  *Moreno v. State,* 24 Tex.App. 401, 6 S.W. 299 (1887). (Error to refuse defendant's requested charge.);
   *Law v. State,* 73 Tex.Cr.R. 5, 163 S.W. 90 (1914). (Not error, under facts of case, to refuse defendant's requested charge.).

4.  *Pollard v. State,* 33 Tex.Cr.R. 197, 26 S.W. 70 (1894). (The charge given was reversible error; it required defendant *to* overcome a "presumption of guilt".);
   *Wheeler v. State,* 34 Tex.Cr.R. 350, 30 S.W. 913 (1895). (The charge given was reversible error; the court suggested a correct charge on remand.);
   *Scott v. State,* 36 S.W. 276 (Tex.Cr.App.1896). (The charge given was reversible error; not the province of the judge to tell the jury what the criminative facts are.);
   *but see: Wheeler v. State,* (on remand) 38 Tex. Cr.R. 71, 41 S.W. 615 (1897). (The charge given [suggested by the Court of Criminal Appeals earlier] held proper.);
   *and see: Seebold v. State,* 89 Tex.Cr.R. 563, 232 S.W. 328, 331 (1921). (Judge Hawkins "never looked with favor on the involved charge necessary in explanation of recent possession of stolen property. Even the charge in [Wheeler] is calculated to confuse the jury, and it is quite difficult to draw one, and avoid charging on the weight of the testimony.").

We believe the crux of the issue of whether a "presumption or inference" may be drawn from the fact of possession of recently stolen property is whether or not this is properly a "matter of law" instruction, or an appellate rule of construction to be followed to determine the sufficiency of the evidence. Assuming arguendo it is a matter of jury instruction even the United States Supreme Court has struggled with the question of the permissible "inferences or presumptions" which may be used. In particular it has held certain standards of instruction to be necessary to preserve the rights of the accused,[5] should the jury be charged on such an "inference". We note in this case there were no precautionary instructions vis-a-vis the instruction on "presumption or inference".

We hold the question to be one of law to be applied in determining the sufficiency of the evidence. We hold it is error to instruct the jury on this presumption or inference of guilt application as was done in this case. Clearly it would be improper to instruct the jury that they may convict of murder, that is *presume* the guilt of a defendant, who was found over the still warm body of the deceased with the smoking gun in defendant's hand, if the defendant *did not explain*. We must never take as a standard of jurisprudence, that guilt may be presumed alone from a defendant's silence. Human nature will provide all the instruction needed; it is not for the court to provide the final straw to swing the balance of evidence to decide guilt "beyond a reasonable doubt."

It is clear in the "smoking gun" case the court could not charge the jury that they "may presume" the defendant guilty of murder. To do so would be an impermissible comment on the evidence. It is likewise improper to charge the jury that they may "presume guilt" of burglary or theft from the fact of possession of recently stolen property alone, especially when such instruction contains a comment on the defendant's "silence", or "unexplained" possession.

▋ As a rule of appellate construction the courts must weigh the evidence against a standard. A proper definition and application of this standard was discussed in *Hardesty v. State,* 656 S.W.2d 73, 77 (Tex. Cr.App.1983). Judge Miller wrote that:

Proper use of legal terminology requires that the deduction drawn from a defendant's recent and unexplained possession of stolen property be termed a permissible inference. Although many cases use the term "presumption", we now clarify the law and disavow any previous language to the contrary in discussing theft cases under V.T.C.A. Penal Code, § 31.-03(b)(1).

Further, Judge Miller observed that:

[T]he deduction of guilt drawn from a defendant's recent and unexplained possession of stolen property is merely a circumstance of guilt and is not conclusive. *Ellard,* [*v. State*] supra [509 S.W.2d 622 (Tex.Cr.App.1974)]; *Williams,* [*v. State*] supra [631 S.W.2d 171 (Tex.Cr.App.1982)]. Once the permissible inference arises, the sufficiency of the evidence must still be examined according to applicable direct or circumstantial evidence standards of appellate review since the inference is not conclusive. *Hardesty, supra* at 77.

Therefore, without further comment we simply note that the use of the words presumption and/or inference may no longer be correctly used even as a proper appellate standard, but rather the phraseology "circumstance of guilt", is the correct phraseology.

As the evidence of possession may rise to no higher a level than a "circumstance of guilt" and so considered on appellate review, the jury should never be instructed on the "inference or presumption" of guilt, and thereby be told by the court what is the least evidence *necessary* for them to find guilt. Grounds of error three, nine and ten are sustained.

5. *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *Allan v. United States,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

Roberts, in his sixth ground of error, contends that the trial court erred in failing to apply the law to the facts in the charge to the jury. He requested a specific charge which stated:

> If you believe from the evidence beyond a reasonable doubt that the Defendant, Morris Roberts, did in Denton County, Texas, on or about December 29th, [sic] 1982, as alleged in the indictment, did then and there intentionally and knowingly, and without the effective consent of Amin Damra, enter a building or residence occupied by Amin Damra, and did then and there commit theft, to-wit: Did then unlawfully obtain property from Amin Damra, the owner thereof, without the effective consent of the said Amin Damra, and with the intent to deprive said owner of said property, and that the building was then and there a habitation occupied by the said Amin Damra, you will find the Defendant, Morris Roberts, guilty.

The request was denied and the court charged the jury as follows:

> Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, MORRIS ROBERTS, did, in Denton County, Texas, on or about December 10, 1982, knowingly or intentionally, without the effective consent of Amin M. Damra, the owner thereof, enter a habitation and did attempt to commit and committed theft, you will find the defendant guilty.
>
> If you do not so believe, or if you have a reasonable doubt thereof, you will find the defendant not guilty.

The only discernible difference between the two charges is that the requested charge applies the facts of the case to the definition of theft. The court had previously charged the jury on the definition of theft as follows:

> A person commits the offense of theft if, with intent to deprive the owner of property, he appropriates the property without the owner's effective consent. "Appropriate" means to acquire or other-

wise exercise control over property other than real property.

TEX.CODE CRIM.PROC.ANN. art. 36.19 (Vernon 1981) provides:

> Whenever it appears by the record in any criminal action upon appeal that any requirement of Articles 36.14, 36.15, 36.-16, 36.17 and 36.18 has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. All objections to the charge and to the refusal of special charges shall be made at the time of the trial.

We do not believe that the failure to give the requested charge was calculated to injure the rights of the defendant and it does not appear from the record that the defendant was denied a fair and impartial trial due to such failure. We believe that the charge to the jury sufficiently applied the law to the facts of the case. We overrule Roberts' sixth ground of error.

Roberts contends in his seventh ground of error that the trial court erred in excluding evidence of a probated sentence of a State's witness to show bias, interest and motive of the State's witness. Roberts claims that the State's witness, Gregory Paul Reed, was convicted of a felony burglary on February 26, 1981, was placed on probation for said offense, and a motion to revoke was filed on July 19, 1982, and that the motion to revoke was later withdrawn by the District Attorney's office. Roberts contends that a statement was made on January 3, 1983, by Reed in which he stated that he and Morris Roberts had done another burglary. At the time the statement was made by Reed, he was on probation and the police department and the State never filed a motion to revoke Reed's probation, nor filed any charges against Reed although Roberts was indicted and tried for the offense and found not guilty. Roberts attempted to introduce this to show the motive, interest, and bias of Reed

in testifying and the position of Reed as an unindicted co-conspirator.

At the time the defendant attempted to enter the evidence of Reed's statement and the State's failure to revoke probation, a bench conference, outside the hearing of the jury, took place between the court, the State's prosecutor and counsel for Roberts, Ms. Shipley, the pertinent part of which is as follows:

> THE COURT: All right. I'm going to ask you, are you sure that you want to ask him the question? Because I'm going to allow you to do it.
>
> MS. SHIPLEY: Yes, Your Honor.

At this point, the State objected to the admission of such evidence and defendant's counsel, Ms. Shipley, attempted to make sure that her actions were in conformity with the defendant's wishes, as follows:

> MS. SHIPLEY: Thank you. I'll ask him again, Your Honor.
>
> THE COURT: You better do it right now.
>
> (Whereupon, Ms. Shipley confers with Defendant outside hearing of court and jury; thereafter the following proceedings were had outside of hearing of jury at bench.)
>
> MS. SHIPLEY: We're going to withdraw the question, Your Honor.
>
> THE COURT: All right. I want to make it real clear—
>
> MS. SHIPLEY: Yes Your Honor, I won't re-introduce that.

The court then attempted to clarify the wishes of the defendant and the impending actions of defendant's council, Ms. Shipley, as follows:

> THE COURT: Anyway, it refers to a burglary that apparently took place on or about the 29th of December of 1982 involving both the witness, Gregory Reed, and the Defendant, Morris Roberts. The subject burglary not being the burglary of which the Defendant is being tried for in this case. The Defendant's attorney has indicated that she would like to question the witness, Gregory Reed, in regard to this December 29th burglary. The Court has taken it and has now

indicated to the Defendant, through her attorney, that he will allow her to question the witness, Gregory Reed, in regard to this December 29th burglary, even though it has nothing to do with this case, except perhaps to show the bias and intent, prejudice or motive on the part of the witness, Gregory Reed. I want to make it real clear now where everybody understands, for the purpose of the record, that if you so select I will let you get into that based on your original request. Now you have told me that you wish not to do that. And I just want to make the record real clear that I would have allowed you to do it where there won't be any questions as to the Court's standpoint. Now you wish not to get into it?

> MS. SHIPLEY: That's true, Your Honor, I wish to withdraw my request. And, just for the record, Your Honor, the charge underlies the December 29th, 1982 burglary that the Court has referred to in that statement. My client was tried for that and was found not guilty.
>
> THE COURT: Okay. I see. Okay. I just want to—
>
> MS. SHIPLEY: But I do wish to withdraw it.

■ At trial, the alleged statement of Gregory Paul Reed was not introduced into evidence and no bill of exceptions was perfected. Under such circumstances, nothing is preserved for review. *See Passmore v. State,* 617 S.W.2d 682, 685 (Tex.Cr.App. 1981); *Marini v. State,* 593 S.W.2d 709, 716 (Tex.Cr.App.1980). Roberts' seventh ground of error is overruled.

Roberts' eighth ground of error, contends that insufficient evidence exists to convict the defendant on the charge of burglary in the present case. In obtaining a conviction in the present case, the State relied on the unexplained possession of the recently stolen property. The Court of Criminal Appeals in the *Hardesty* case, discussed the two lines of cases holding: 1) that evidence of defendant's recent and unexplained possession of stolen property was sufficient in itself to sustain a convic-

tion; and 2) those finding such evidence merely a circumstance of guilt and not conclusive. Judge Miller writing for the court followed the latter line and held that the sufficiency of the evidence in toto must be assessed "since the inference of guilt is merely a circumstance of guilt and is not conclusive." *Hardesty, supra* at 77.

We have previously set out the evidence in this opinion. We find the evidence sufficient in toto to support the conviction. The burglary occurred December 10th. Roberts pawned a camera taken in the burglary that same day. His explanation for possession of the camera was that he bought it 17 days later than the date he actually pawned it. Roberts was arrested 19 days after the burglary, and still had in his possession other property taken in the offense. Roberts testified at trial he bought the camera from another on the day of the burglary. The other party denied this. It is the jury's province to resolve the conflict of testimony. We overrule Roberts' eighth ground of error, and observe that although the case be reversed, an acquittal is not proper.

We have sustained grounds of error three, nine and ten and find that there was error in the charge given in this case. The error was prejudicial to the rights of the appellant to a fair trial. The case is reversed and remanded to the trial court.