Daniel Gaston SHOCKLEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–84–00952–CR.

Court of Appeals of Texas, Dallas.

July 29, 1985.

Rehearing Denied July 29, 1985.

Randy Taylor and John H. Hagler, Dallas, for appellant.

Henry Wade, Criminal Dist. Atty., and Constance M. Maher, Asst. Dist. Atty., Dallas, for appellee.

Before SPARLING, ALLEN and MALONEY, JJ.

ALLEN, Justice.

Daniel Gaston Shockley appeals his conviction for burglary of a building. The jury assessed his sentence at ten years and one day in the Texas Department of Corrections. We agree with appellant's grounds of error one and two wherein he challenges the trial court's jury charge and reverse and remand the cause for a new trial. Additionally, we address appellant's contention that the evidence is insufficient to support the conviction.

The facts of the case are as follows. On October 27, 1982, the owner of the Orchard Hills Pharmacy locked the store at closing 10:30 p.m. and checked each of the front six pharmacy doors from the outside to assure that they were securely locked. A sign in the window indicated store hours.

Around midnight the same evening, police officer Bill Connatser was patrolling the Orchard Hills Shopping Center. While patrolling, Connatser saw a blue Ford van pull up parallel to the front sidewalk of the pharmacy and he observed a man, later identified as the appellant, exit the van from the passenger side. The appellant walked over to one of the pharmacy doors, stooped down slightly, and then entered the building. The van was driven off. Thinking that a burglary was in progress, Connatser radioed the dispatcher for police back up assistance. Connatser followed the van for a short distance and stopped it. The driver was arrested for driving without a license and the van was impounded. Connatser made an inventory list of the property found in the van which included in part: a programmable radio frequency scanner; a pair of horseshoe pliers; binoculars; a four-channel radio frequency scanner; a power converter; and a Yeasu radio transmitter receiver. Connatser testified that the radio frequency scanner was plugged in and the transmitter-receiver was tuned to the police department's dispatch frequency.

Police officer Charles Flanagan was sent to the pharmacy pursuant to Connatser's burglary call. He arrived at the pharmacy within fifteen to twenty seconds from the dispatch. Upon arrival, Flanagan walked up to the front of the pharmacy and started checking the front doors to see if they were locked. As he tried to open one of the doors, the lock cylinder fell out into his hand. Flanagan entered the pharmacy through the open door and saw appellant "crouched down behind one of the shelves." With his gun already drawn, Flanagan told appellant to "freeze." The appellant told Flanagan that he had "stayed in the business after it was closed" and "was looking for a pack of cigarettes and couldn't find anybody." No one else was found in the pharmacy and the appellant was arrested.

Crime scene investigator James Wood was also dispatched to the pharmacy. He observed that the back door of the pharmacy was partially unbolted and the padlock had been pried off. Close inside the back door, Wood found a cotton glove, a crowbar and a knapsack. Inside the knapsack was another cotton glove, a Black and Decker drill, and extension cord, two pliers, a hatchet, a hammer, a jackhammer, a green crowbar, a "nail-puller pry tool," a pick, a sledgehammer, a Phillips head screwdriver, the handle of a dent puller, oil, a bolt, a slotted screwdriver, three punches, six drill bits, three additional screwdrivers, vice grips, a bent screwdriver, a chisel, three plastic trash bags and two denim bags. The pharmacy owner testified that the knapsack was not there when he closed the store. Further, officer Jackie Waggoner, specializing in burglary investigations, testified that all the instruments found in the knapsack could be used as burglary tools.

The next day an employee found a programmable walkie-talkie on one of the pharmacy shelves; the walkie-talkie was not an item carried by the store. The police took possession of the walkie-talkie and found that it was tuned to their primary channel.

In grounds of error one and two, appellant argues that it was error for the trial court to give a jury charge which contained a presumption of intent to commit theft because the presumption should only be used on appellate review and the presumption was a comment on the weight of the evidence. We agree. The complained of paragraph is as follows: "Our law provides that the act of breaking and entering a building at nighttime raises a presumption that the act was done with the intent to commit theft." Appellant objected to this charge at trial on the same grounds now urged on appeal.

■ At the outset, we point out that the offense of burglary arises when a person enters a building or habitation with the intent to commit a felony or theft. TEX. PENAL CODE ANN. § 30.02 (Vernon 1974). Nothing in our burglary statute indicates that a presumption arises with regard to proof of intent. Intent, as an essential element of the offense of burglary, must be proved by the State beyond a reasonable doubt; it may not be left simply to speculation and surmise. *Greer v. State*, 437 S.W.2d 558, 559–60 (Tex.Crim. App.1969). As a question of fact for the jury, however, intent may be inferred from surrounding circumstances. *Ortega v. State*, 626 S.W.2d 746, 749 (Tex.Crim.App. 1982); *Mauldin v. State*, 628 S.W.2d 793, 795 (Tex.Crim.App.1982).

Several cases do, however, state that an entry made without consent in the nighttime is presumed to have been made with intent to commit theft. *See generally, Mauldin*, 628 S.W.2d at 795; *Solis v. State*, 589 S.W.2d 444, 446 (Tex.Crim.App. 1979); *Moss v. State*, 574 S.W.2d 542, 544 (Tex.Crim.App.1978) (and cites therein). Although there is some question as to whether this is actually a presumption or simply a permissible inference, each case applying the principle has done so in review of sufficiency of the evidence questions. Moreover, recently the court of criminal appeals has explained the nature of the presumption:

> The presumption of intent to commit theft arising from non-consensual nighttime entry is an appellate vehicle employed to review the sufficiency of the evidence, not a trial vehicle used to prove an element of the State's case.

*Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Civ.App.1985) (en banc) (dicta).

■ Following *Aguilar*, we hold that the presumption of intent to commit theft arising from a non-consensual nighttime entry is intended solely as a guide for appellate consideration to determine sufficiency of the evidence to sustain a conviction and is not to be given in a charge to the jury. *Cf. Hardesty v. State*, 656 S.W.2d 73, 77 (Tex.Crim.App.1983) (When a defendant is found in possession of recently stolen property and at the time of arrest fails to explain its acquisition, the jury may infer guilt, not presume it); *Roberts v. State*, 672 S.W.2d 570, 578 (Tex.App.—Fort Worth

1984, no pet.) (It is improper to charge the jury that they may "presume guilt" of burglary or theft from the accused's possession of recently stolen property). We also hold that when the jury is instructed that they may presume guilt from certain facts alone, if found, that the instruction is inescapably a comment on the weight of the evidence. *Cf. Roberts,* 672 S.W.2d at 579. A proper burglary charge should instruct the jury that "they may find the defendant guilty of burglary if they find beyond a reasonable doubt that at the time of the offense [the accused] had the intent to commit the offense of theft." *Rider v. State,* 567 S.W.2d 192, 197 (Tex.Crim.App.1978); *see also Guerra v. State,* 657 S.W.2d 511, 514 (Tex.App.—Corpus Christi 1983, pet. ref'd).

■ Since we have held that there is error in the jury charge, we must now determine whether *"some* harm to the accused" has resulted from the error.[1] *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim.App.1985). The degree of harm "must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza,* 686 S.W.2d at 171.

Part of the appellant's defense at trial was that he lacked the state of mind to commit burglary. The evidence does not overwhelmingly preclude this defense. Such a defense was brought forth by cross-examination, appellant's own testimony, and closing argument. The pharmacy was lighted, in part, both inside and outside. Appellant stated that he thought the store was open and that he entered the store through an unlocked door to buy some items. Appellant further stated that he had no knowledge of the burglary tools found in the store at the time of his arrest. His fingerprints were not found on any of the tools and he was not found in possession of any stolen property. Because the appellant's state of mind was contested, we conclude that the giving of the jury charge on the presumption of intent to commit theft was harmful error. *See Boone v. State,* 689 S.W.2d 467, 469 (Tex.Crim.App. 1985) (en banc); *see also Rider,* 567 S.W.2d at 196. Accordingly, we reverse and remand the cause for new trial.

■ Appellant's sixth contention is that the evidence is insufficient to sustain his conviction. We hold that viewing the evidence in the light most favorable to the verdict, there is sufficient evidence to support the jury's verdict. *Guerra,* 657 S.W.2d at 513; *Phillips v. State,* 654 S.W.2d 846, 849 (Tex.App.—Dallas 1983, no pet.); *Latimer v. State,* 650 S.W.2d 497, 498 (Tex.App.—Houston [14th Dist.] 1983, no pet.).

Reverse and remand.

---

1. Under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, the State is prohibited from using evidentiary presumptions in a jury charge that effectively relieve the State of proving every essential element of a crime beyond a reasonable doubt. *Francis v. Franklin,* —— U.S. ——, ——, 105 S.Ct. 1965, 1970, 85 L.Ed.2d 344 (1985). *See also, Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). A reasonable juror could have understood the presumption given in this case as shifting the burden of persuasion to the defendant on the element of intent to commit theft. The charge read as a whole does not explain or cure this error. *See, Francis,* —— U.S. ——, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). It has not been determined, however, whether shifting the burden of proof creates reversible error; accordingly, we must review the entire record to determine whether the accused was harmed. *Francis,* —— U.S. at ——, 105 S.Ct. at 1974.