# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00303-CR

**Joseph James Bishop, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
### NO. 35385, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal pursuant to *Anders v. California*, 386 U.S. 738 (1967). A jury convicted appellant Joseph James Bishop of the offense of burglary of a habitation with intent to commit robbery, a first-degree felony. *See* Tex. Penal Code Ann. § 30.02(d) (West 2011). Punishment, enhanced by a prior felony conviction, was assessed at life imprisonment and a $10,000 fine. We will affirm the judgment of the district court.

## BACKGROUND

The State alleged that on or about the night of March 17, 2008, Bishop, along with two other individuals who were charged separately, burglarized a home. During the burglary, the occupant of the residence, 58-year-old Catherine Adair, was allegedly assaulted, blindfolded, threatened, and held down on her bed by one of the burglars while the others rummaged through her house and stole her property. According to the State, Bishop was the perpetrator who had held down the victim while the other men searched the house. Bishop was charged with one count of burglary

of a habitation with intent to commit robbery, one count of burglary of a habitation with intent to commit theft, and one count of credit card abuse.

The case proceeded to trial, but a mistrial was declared after the jury was unable to reach a verdict. The case was subsequently retried. Evidence considered by the jury during the retrial included the testimony of the victim; testimony of the police officers who had investigated the burglary; Bishop's video-recorded statement that he had provided to the police following his arrest; testimony of witnesses who had identified a man who appeared to be Bishop at a retail store with his alleged accomplices subsequent to the burglary (the accomplices were allegedly using the victim's stolen credit cards to purchase items at the store); corresponding security camera footage from the retail store showing a man at the store who appeared to be Bishop; testimony from an ex-girlfriend of Bishop's who claimed that Bishop had admitted to her that he had committed the offense and had requested that she help him develop an alibi; and DNA evidence tending to show that Bishop could not be excluded as a contributor of DNA that had been found on a bag and binoculars that were allegedly used during the offense and found in Bishop's possession.

At the close of evidence, the State abandoned count three of the indictment relating to the offense of credit card abuse. The jury found Bishop guilty of the offenses of burglary of a habitation with intent to commit robbery and burglary of a habitation with intent to commit theft. The State elected to proceed to punishment solely on the offense of burglary with intent to commit robbery. After finding that Bishop had been previously convicted of the offense of aggravated assault, the jury assessed punishment as noted above. This appeal followed.

Bishop's court-appointed attorney has filed a motion to withdraw supported by a brief concluding that the appeal is frivolous and without merit. The brief meets the requirements of

*Anders v. California* by presenting a professional evaluation of the record demonstrating why there are no arguable grounds to be advanced. *See* 386 U.S. at 744-45; *see also Penson v. Ohio*, 488 U.S. 75, 80 (1988); *High v. State*, 573 S.W.2d 807, 813 (Tex. Crim. App. 1978); *Currie v. State*, 516 S.W.2d 684, 684 (Tex. Crim. App. 1974); *Jackson v. State*, 485 S.W.2d 553, 553 (Tex. Crim. App. 1972); *Gainous v. State*, 436 S.W.2d 137, 138 (Tex. Crim. App. 1969). Bishop received a copy of counsel's brief and was advised of his right to examine the appellate record and to file a pro se brief. In response, Bishop has filed a pro se brief and two supplemental briefs asserting various reasons why he does not believe the appeal to be frivolous.

## STANDARD AND SCOPE OF REVIEW

Before granting counsel's motion to withdraw in an *Anders* appeal, an appellate court must conduct "a full examination of all the proceeding[s] to decide whether the case is wholly frivolous" or if there are any arguable grounds for appeal. *Anders*, 386 U.S. at 744; *Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991). We are "not required to review the merits of each claim raised in an *Anders* brief or a pro se response." *Bledsoe v. State*, 178 S.W.3d 824, 827 (Tex. Crim. App. 2005). Instead, our "duty is to determine whether there are any arguable grounds and if there are, to remand to the trial court so that new counsel may be appointed to brief the issues." *Id*.

"The terms 'wholly frivolous' and 'without merit' are often used interchangeably in the *Anders*-brief context." *McCoy v. Court of Appeals*, 486 U.S. 429, 438 n.10 (1988). "Whatever term is used to describe the conclusion . . . the court must reach before granting [counsel's] request

3

[to withdraw], what is required is a determination that the appeal lacks any basis in law or fact."[1]

*Id*. If such a determination is made, the appeals court may then grant counsel's motion to withdraw and affirm the judgment below. *See Anders*, 386 U.S. at 744. "On the other hand, if [the appeals court] finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal." *Id*. In such a case, we must "remand the cause to the trial court so that new counsel may be appointed to brief the issues." *Bledsoe*, 178 S.W.3d at 827 (citing *Stafford*, 813 S.W.2d at 511).

## DISCUSSION

In keeping with this Court's practice of addressing the pro se issues that have been raised, we will briefly explain why Bishop's contentions lack "arguable merit." *See Garner v. State*, 300 S.W.3d 763, 767 (Tex. Crim. App. 2009).[2] Bishop claims that (1) the district court erred in admitting evidence of extraneous offenses and refusing to grant a mistrial based on the admission of such evidence; (2) the district court erred in admitting Bishop's statement to the police following the invocation of his Fifth Amendment right to counsel; (3) the evidence is insufficient to support a finding that a firearm was used or exhibited during the offense; (4) he was denied a fair trial due to prosecutorial misconduct; (5) the jury charge impermissibly authorized a conviction for an

---

[1] The Supreme Court has also described a frivolous argument as one that "cannot conceivably persuade the court." *McCoy v. Court of Appeals*, 486 U.S. 429, 436 (1988) (quoting *United States v. Edwards*, 777 F.2d 364, 365 (7th Cir. 1985)).

[2] *See also Hernandez v. State*, No. 03-11-00198-CR, 2011 Tex. App. LEXIS 9784, at *4 (Tex. App.—Austin Dec. 14, 2011, no pet.) (mem. op., not designated for publication); *Pulliam v. State*, No. 03-10-00737-CR, 2011 Tex. App. LEXIS 6976, at *2 (Tex. App.—Austin Aug. 26, 2011, pet. ref'd) (mem. op., not designated for publication); *Diaz v. State*, No. 03-10-00267-CR, 2011 Tex. App. LEXIS 2667, at *4-6 (Tex. App.—Austin Apr. 7, 2011, pet. ref'd) (mem. op., not designated for publication).

"irrelevant theory" of theft; (6) he was harmed by the district court's failure to comply with certain procedural and charge requirements relating to evidence presented during the punishment hearing; and (7) he was denied the effective assistance of counsel during trial and on appeal.

**Admission of evidence relating to extraneous offenses**

Bishop first argues that the district court erred in admitting evidence of extraneous offenses contained in State's Exhibit 14, the video-recorded statement he provided to police following his arrest. In the statement, Bishop referred to a prior aggravated-assault conviction from New Jersey and an alleged domestic-violence incident involving his girlfriend. Also in the statement, Bishop claims knowledge of drug transactions and other burglaries and robberies committed by his alleged accomplices.

We are to review the trial court's admission of evidence for abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008). The trial court does not abuse its discretion in admitting evidence unless its ruling lies "outside the zone of reasonable disagreement." *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. Tex. R. Evid. 404(b). It may, however, be admissible for other purposes. *Id*. Moreover, the erroneous admission of evidence "must be disregarded" unless it affects "substantial rights." Tex. R. App. P. 44.2(b); *see Motilla v. State*, 78 S.W.3d 352, 355-56 (Tex. Crim. App. 2002). Under this standard, an error is harmless if an appellate court has "fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but slight effect." *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008).

5

Even if we were to find that the evidence should not have been admitted, we could not conclude on this record that Bishop was harmed by its admission. Regarding Bishop's knowledge of other crimes committed by the co-defendants, the district court's admission of the evidence was conditioned upon the prosecutor eliciting testimony in front of the jury that Bishop himself was not involved with those crimes. In compliance with the district court's condition, the prosecutor asked the following question of the officer who had obtained Bishop's statement:

> Q: As the judge was just [saying], there was some talk about other crimes that [Bishop] would tell you about. Did you at any time think he, this defendant, was involved in those crimes?
>
> A: No, ma'am, I did not.

The district court also provided to the jury the following oral instruction to disregard any evidence of extraneous offenses:

> Members of the Jury, any evidence that you might have heard, if any, about any other offense other than the offense charged is to be disregarded by you. The defendant is on trial for the offense charged in the indictment. You're not to consider any evidence, if there was any, of any other such matters in consideration of this case.

There is no indication in the record that the jury considered the extraneous-offense evidence despite the court's instruction to disregard it or that the jury attributed to Bishop the other crimes committed by his alleged accomplices. Accordingly, there is no basis in law or fact for concluding that Bishop was harmed by the admission of the evidence. *See Marshall v. State*, 210 S.W.3d 618, 628-29 (Tex. Crim. App. 2006). For the same reason, there is no basis in law or fact for concluding that the district court abused its discretion in declining to grant a mistrial based on the admission of the evidence. *See Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009).

6

**Invocation of right to counsel**

Bishop further complains that the entirety of his video-recorded statement should have been excluded because the statement was obtained in violation of his Fifth Amendment right to counsel. *See* U.S. Const. amend. V; *Edwards v. Arizona*, 451 U.S. 477, 483-85 (1981). In *Edwards*, the Supreme Court held that a suspect who has "expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. at 484-85.

The record reflects that when Bishop was brought before the magistrate for his initial appearance, *see* Tex. Code Crim. Proc. Ann. art. 15.17 (West Supp. 2011), he filled out a written form requesting the appointment of counsel. According to Bishop, this written request was sufficient to invoke his right to counsel for Fifth Amendment purposes. In Bishop's view, his subsequent interrogation, without counsel being present, violated that right. However, the court of criminal appeals has recently explained that "a defendant's invocation of his right to counsel at his Article 15.17 hearing says nothing about his possible invocation of his right to counsel during later police-initiated custodial interrogation." *Pecina v. State*, No. PD-1095-10, 2012 Tex. Crim. App. LEXIS 143, at *24-25 (Tex. Crim. App. Jan. 25, 2012). Instead, "an Article 15.17 initial appearance and magistration marks the initiation of adversarial judicial proceedings in Texas and 'plainly signals' the attachment of a defendant's Sixth Amendment right to counsel," which is separate from a suspect's invocation of his Fifth Amendment right to counsel. *See id*. at *20-23. The court added, "The magistration hearing is not an interrogation event." *Id*. at *25. Thus, there is no basis in law or fact for concluding that Bishop invoked his Fifth Amendment right to counsel by requesting the

7

appointment of counsel at his initial appearance. Nor is there any basis in law or fact for concluding on this record that Bishop's statement was obtained following a clear and unequivocal invocation of his Fifth Amendment right to counsel. *See Davis v. United States*, 512 U.S. 452, 459 (1994) (explaining that invocation of right to counsel must be clear and unambiguous); *Davis v. State*, 313 S.W.3d 317, 339 (Tex. Crim. App. 2010) ("To trigger law enforcement's duty to terminate the interrogation, a suspect's request for counsel must be clear, and the police are not required to attempt to clarify ambiguous remarks.").

**Deadly-weapon finding**

Bishop next asserts that the evidence is insufficient to support the jury's deadly-weapon finding. According to Bishop, although there was evidence presented that a gun was stolen during the burglary, "there is no indication the gun was used in a threatening manner or for any purpose other than to steal it."

In reviewing the sufficiency of the evidence, this Court considers all the evidence in the light most favorable to the verdict and determines whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *see Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007).

When applied to the special issue regarding the use or exhibition of a deadly weapon during the commission of a felony offense, the question facing this Court is whether a rational trier

of fact could find beyond a reasonable doubt that the mere possession of the deadly weapon facilitated the associated felony.[3] *Gale v. State*, 998 S.W.2d 221, 224 (Tex. Crim. App. 1999); *see also Coleman v. State*, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004). Any employment of a firearm or other deadly weapon, even its simple possession, to facilitate the commission of another offense constitutes a "use" of the weapon. *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989).

In this case, the victim, Catherine Adair, provided testimony regarding the use or exhibition of a deadly weapon. Adair testified that the burglars asked her if she had any guns in the house. She told them that she had a "shotgun in the closet," and "they went and got it." Adair was asked if she could "hear anything with regard to the shotgun," and she answered, "Yes." When asked to describe what she had heard, Adair explained, "Well, it's 20 gauge. And growing up around here, I'm sure a lot of people know about that. And so you have a lever that you pull back to load your first shell. And when you click the button, it pops. And then when you put your others [sic] in, they just click in the bottom." Adair was next asked if someone was "manipulating or handling the shotgun." Again, Adair answered, "Yes," and added, "I could hear them." When asked how what she had heard affected her, Adair replied, "I didn't know what they were going to do with [the gun]." When asked if she was afraid for her life, she answered, "Yes, ma'am." From this evidence, the jury could have reasonably inferred that Adair had heard the men loading the shotgun and that by loading the shotgun in Adair's presence, the men were threatening her with its use. The

---

[3] It is important to note that the deadly-weapon portion of the jury charge included an instruction on the law of parties. *See* Tex. Penal Code Ann. § 7.01(a) (West 2011). Accordingly, even if Bishop himself did not use or exhibit a firearm during the offense, if there is sufficient evidence that one of his accomplices did, the use or exhibition of the deadly weapon can be attributed to Bishop. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp. 2011).

9

jury also could have reasonably inferred that by threatening Adair with the shotgun, the men were facilitating the commission of the burglary by further scaring Adair into submission. Adair later testified that the man who was holding her down on the bed (allegedly Bishop) said "[s]omething to the effect of, 'Let's rod her' or 'I'm going to rod her.'" Although Adair did not know "for sure" what this meant and whether the comment was "of a sexual nature," she "knew it didn't sound good." A rational jury could have reasonably inferred from this testimony that Bishop had intended to either sexually assault Adair with the gun or frighten her further into submission. Consequently, the jury could have reasonably inferred from this and the other testimony summarized above that the gun was used to facilitate the commission of the burglary—the handling and manipulation of the gun in Adair's presence caused her to fear for her life and made her less likely to resist the men who were robbing her. When the above evidence and all reasonable inferences to be drawn therefrom are viewed in the light most favorable to the finding, there is no basis in law or fact for concluding that the evidence was insufficient to support the deadly-weapon finding.

**Alleged charge error**

Bishop also asserts that the jury charge authorized a conviction "based on an irrelevant theory of theft." The "irrelevant theory," in Bishop's view, is his unexplained possession of Adair's recently stolen property, some of which, the evidence tended to show, was found in Bishop's possession. The unexplained possession of recently stolen property "is not positive evidence of burglary or theft, but is merely a circumstance to be considered with other evidence in determining guilt." *Acy v. State*, 618 S.W.2d 362, 365 (Tex. Crim. App. 1981). The court of criminal appeals once held that "[w]hen proof of theft is supported only by the unexplained possession of property recently stolen, a defendant is entitled to a charge on the law of circumstantial

evidence, if timely requested or if there is a timely objection to the court's jury instructions." *Levi v. State*, 573 S.W.2d 784, 784-85 (Tex. Crim. App. 1978). However, the court of criminal appeals later abolished this requirement, holding that such a charge was improper because it confused the jury by creating different standards for direct and circumstantial evidence cases. *See Hankins v. State*, 646 S.W.2d 191, 197 (Tex. Crim. App. 1983) (op. on reh'g); *see also Roberts v. State*, 672 S.W.2d 570, 580 (Tex. App.—Fort Worth 1984, no pet.) (holding that "[a]s the evidence of possession may rise to no higher a level than a 'circumstance of guilt' and so considered on appellate review, the jury should never be instructed on the 'inference or presumption' of guilt, and thereby be told by the court what is the least evidence necessary for them to find guilt").

As the State observes, Bishop's argument is misplaced, as no such instruction or theory was provided in the charge. Instead, the jury was appropriately instructed on the applicable law of the case as defined in the penal code. *See* Tex. Penal Code Ann. § 31.03 (West Supp. 2011). There is no basis in law or fact for concluding otherwise.[4]

**Prosecutorial misconduct**

Bishop further contends that the prosecutor engaged in misconduct during trial by (1) arguing outside the record that Adair, who was unable to visually identify Bishop as the perpetrator,[5] was able to identify Bishop's voice in an audio recording that was never admitted into

---

[4] We also note that even if there had been error in the charge, Bishop did not object to it during trial. Accordingly, to be entitled to reversal, the record would have to reflect that Bishop was egregiously harmed by the error. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (test for egregious harm is whether defendant has been denied fair and impartial trial). On this record, there is no basis in law or fact for concluding that such harm occurred.

[5] Adair testified that during the burglary, something was placed over her head so that she was unable to see anything.

evidence, and (2) attempting to elicit evidence that the other alleged burglars named Bishop as their accomplice. Regarding the first complaint, although defense counsel objected to the prosecutor's argument (and the district court twice admonished the prosecutor in the presence of the jury to stay on the record), counsel never obtained a ruling on his objection from the district court. Nor did counsel request an instruction to disregard the prosecutor's argument or move for a mistrial. Accordingly, Bishop failed to preserve error on this point. *See* Tex. R. App. P. 33.1(a); *Estrada v. State*, 313 S.W.3d 274, 303 (Tex. Crim. App. 2010); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Consequently, there is no basis in law or fact for reversing Bishop's conviction on that ground. Regarding the second complaint, the record reflects that the district court sustained defense counsel's objections to the prosecutor's attempts to elicit evidence relating to the statements of the co-defendants. As the prosecutor's efforts to elicit the testimony were unsuccessful, there is no basis in law or fact for concluding that Bishop was harmed by the prosecutor's failed attempts to admit the evidence.

**Punishment issues**

Bishop asserts that there were two non-frivolous issues that arose during punishment. First, Bishop claims that he was egregiously harmed by the district court's failure to instruct the jury that it may not consider evidence of extraneous offenses in assessing punishment unless it was satisfied beyond a reasonable doubt that such offenses were attributable to the defendant. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a) (West Supp. 2011); *Fields v. State*, 1 S.W.3d 687, 688 (Tex. Crim. App. 1999). Second, Bishop contends that he was harmed by the district court's failure to comply with the procedural requirements relating to enhancement allegations. *See* Tex. Code

12

Crim. Proc. Ann. art. 36.01 (West 2007). Specifically, the record reflects that the district court failed to read the enhancement allegation to the jury and failed to receive Bishop's plea to the allegation.

Regarding the failure of the district court to instruct the jury on the State's burden of proof regarding extraneous-offense evidence, such failure is charge error. *See Huizar v. State*, 12 S.W.3d 479, 484-85 (Tex. Crim. App. 2000). Accordingly, because Bishop did not object to the error during trial, he is not entitled to reversal unless the record reflects that he suffered egregious harm. *See Almanza v. State*, 686 S.W.2d 157, 172 (Tex. Crim. App. 1985) (op. on reh'g). In other words, the record must show that Bishop was deprived of a fair and impartial trial. *Id*. at 171. The harm to the accused must be actual, not merely theoretical. *Id*. at 174. "Egregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). Errors that result in egregious harm affect the very basis of the case, deprive the defendant of a valuable right, vitally affect a defensive theory, or make the State's case clearly and significantly more persuasive. *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011).

Having reviewed the entire record, including the record of the punishment hearing, we find no basis in law or fact for concluding that Bishop suffered egregious harm. The extraneous-offense evidence offered by the State at the punishment hearing was strong. In fact, much of the evidence, including the evidence of Bishop's prior conviction for aggravated assault, was largely undisputed. Thus, the jury could have found beyond a reasonable doubt that Bishop had committed the extraneous offenses even without the instruction. *See Graves v. State*, 310 S.W.3d 924, 930 (Tex. App.—Beaumont 2010, pet. ref'd). We also observe that the charged offense, which the jury had already found beyond a reasonable doubt that Bishop had committed, was a violent home

13

invasion committed at night against a woman who was assaulted while she slept, held down and essentially blindfolded on her bed, and threatened with a firearm. The victim provided vivid testimony of how the ordeal had terrified her and continued to traumatize her to this day. In light of this and other evidence presented during trial, we cannot conclude that the evidence concerning the extraneous offenses made the case for punishment clearly and significantly more persuasive. *See Martinez v. State*, 313 S.W.3d 358, 368 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). On this record, there is no basis in law or fact for concluding that the failure of the district court to instruct the jury on the State's burden of proof regarding the extraneous-offense evidence affected the very basis of the case, deprived the defendant of a valuable right, vitally affected a defensive theory, or made the State's case for punishment clearly and significantly more persuasive.

Regarding the district court's failure to comply with the procedural requirements of article 36.01, Bishop failed to object during trial and thus the error was not preserved for our review. *See* Tex. R. App. P. 33.1(a). Accordingly, there is no basis in law or fact for reversing Bishop's punishment on that ground. *See Cantu v. State*, 939 S.W.2d 627, 646 (Tex. Crim. App. 1997); *Lee v. State*, 239 S.W.3d 873, 876-77 (Tex. App.—Waco 2007, pet. ref'd); *Hardin v. State*, 951 S.W.2d 208, 211 (Tex. App.—Houston [14th Dist.] 1997, no pet.); *see also Yeakley v. State*, No. 03-09-00584-CR, 2011 Tex. App. LEXIS 1429, at *16-21 (Tex. App.—Austin Feb. 25, 2011, pet. dism'd, untimely filed) ("[D]efendants are not excused from preserving error at the trial court when there is a violation of article 36.01.").

**Ineffective assistance of counsel**

Finally, Bishop argues that trial and appellate counsel were ineffective. Bishop asserts that trial counsel was ineffective by failing to request an instructed verdict at the conclusion

of the first trial. Bishop also claims that appellate counsel was ineffective by filing an *Anders* brief that, in Bishop's view, "misquoted the record."

To establish that he received ineffective assistance of counsel, Bishop must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Thus, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686.

On the record before us, without knowing the reasons for counsel's decision to not request an instructed verdict, we cannot conclude that trial counsel's performance fell below an objective standard of reasonableness. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (explaining that "where counsel's reasons for failing to do something do not appear in the record," "an appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'") (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)); *see also Gill v. State*, 111 S.W.3d 211, 217 (Tex. App.—Texarkana 2007, no pet.) (concluding that when State presented more than scintilla of evidence in its case-in-chief that would have supported guilty verdict, defense counsel had no ground on which to move for instructed verdict, and thus failure to do so did not render assistance ineffective); *McGarity v. State*, 5 S.W.3d 223, 229 (Tex. App.—San Antonio 1999, no pet.) ("[T]he fact that the defense attorney may or could have moved for the directed verdict on the possibility of its being granted does not show that trial counsel's assistance was ineffective."). Nor can we conclude on this record that if trial counsel had requested an instructed verdict, there is a reasonable

15

probability that the district court would have granted the request. Accordingly, there is no basis in law or fact for concluding that trial counsel was ineffective under either *Strickland* prong.

As for the claims regarding appellate counsel's *Anders* brief, because we have already concluded that the brief complies with the requirements of *Anders*, we cannot conclude that counsel's performance fell below an objective standard of reasonableness. *See Stafford*, 813 S.W.2d at 509-10. Additionally, because we have reviewed the record independent of counsel's *Anders* brief, we cannot conclude that there is a reasonable probability that, but for the alleged "misquoting of the record" in counsel's *Anders* brief, the result of this appeal would have been different. Thus, there is no basis in law or fact for us to conclude that Bishop was denied effective assistance of appellate counsel.

Having reviewed the record, counsel's brief, and Bishop's pro se briefs, we agree with counsel that the appeal is wholly frivolous. *See Garner*, 300 S.W.3d at 766; *Bledsoe*, 178 S.W.3d at 826-27. Counsel's motion to withdraw is granted.

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed:   April 18, 2012

Do Not Publish

16