TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00303-CR






Joseph James Bishop, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT

NO. 35385, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 This is an appeal pursuant to Anders v. California, 386 U.S. 738 (1967). A jury
convicted appellant Joseph James Bishop of the offense of burglary of a habitation with intent
to commit robbery, a first-degree felony. See Tex. Penal Code Ann. § 30.02(d) (West 2011).
Punishment, enhanced by a prior felony conviction, was assessed at life imprisonment and a
$10,000 fine. We will affirm the judgment of the district court.


BACKGROUND

 The State alleged that on or about the night of March 17, 2008, Bishop, along with
two other individuals who were charged separately, burglarized a home. During the burglary, the
occupant of the residence, 58-year-old Catherine Adair, was allegedly assaulted, blindfolded,
threatened, and held down on her bed by one of the burglars while the others rummaged through her
house and stole her property. According to the State, Bishop was the perpetrator who had held down
the victim while the other men searched the house. Bishop was charged with one count of burglary
of a habitation with intent to commit robbery, one count of burglary of a habitation with intent to
commit theft, and one count of credit card abuse.

 The case proceeded to trial, but a mistrial was declared after the jury was unable
to reach a verdict. The case was subsequently retried. Evidence considered by the jury during the
retrial included the testimony of the victim; testimony of the police officers who had investigated
the burglary; Bishop's video-recorded statement that he had provided to the police following his
arrest; testimony of witnesses who had identified a man who appeared to be Bishop at a retail store
with his alleged accomplices subsequent to the burglary (the accomplices were allegedly using the
victim's stolen credit cards to purchase items at the store); corresponding security camera footage
from the retail store showing a man at the store who appeared to be Bishop; testimony from an ex-girlfriend of Bishop's who claimed that Bishop had admitted to her that he had committed the
offense and had requested that she help him develop an alibi; and DNA evidence tending to show
that Bishop could not be excluded as a contributor of DNA that had been found on a bag and
binoculars that were allegedly used during the offense and found in Bishop's possession.

 At the close of evidence, the State abandoned count three of the indictment relating
to the offense of credit card abuse. The jury found Bishop guilty of the offenses of burglary of a
habitation with intent to commit robbery and burglary of a habitation with intent to commit theft.
The State elected to proceed to punishment solely on the offense of burglary with intent to commit
robbery. After finding that Bishop had been previously convicted of the offense of aggravated
assault, the jury assessed punishment as noted above. This appeal followed.

 Bishop's court-appointed attorney has filed a motion to withdraw supported by a
brief concluding that the appeal is frivolous and without merit. The brief meets the requirements of
Anders v. California by presenting a professional evaluation of the record demonstrating why there
are no arguable grounds to be advanced. See 386 U.S. at 744-45; see also Penson v. Ohio, 488 U.S.
75, 80 (1988); High v. State, 573 S.W.2d 807, 813 (Tex. Crim. App. 1978); Currie v. State,
516 S.W.2d 684, 684 (Tex. Crim. App. 1974); Jackson v. State, 485 S.W.2d 553, 553 (Tex. Crim.
App. 1972); Gainous v. State, 436 S.W.2d 137, 138 (Tex. Crim. App. 1969). Bishop received a copy
of counsel's brief and was advised of his right to examine the appellate record and to file a pro se
brief. In response, Bishop has filed a pro se brief and two supplemental briefs asserting various
reasons why he does not believe the appeal to be frivolous.


STANDARD AND SCOPE OF REVIEW

 Before granting counsel's motion to withdraw in an Anders appeal, an appellate court
must conduct "a full examination of all the proceeding[s] to decide whether the case is wholly
frivolous" or if there are any arguable grounds for appeal. Anders, 386 U.S. at 744; Stafford v. State,
813 S.W.2d 503, 511 (Tex. Crim. App. 1991). We are "not required to review the merits of
each claim raised in an Anders brief or a pro se response." Bledsoe v. State, 178 S.W.3d 824, 827
(Tex. Crim. App. 2005). Instead, our "duty is to determine whether there are any arguable grounds
and if there are, to remand to the trial court so that new counsel may be appointed to brief the
issues." Id.

 "The terms 'wholly frivolous' and 'without merit' are often used interchangeably in
the Anders-brief context." McCoy v. Court of Appeals, 486 U.S. 429, 438 n.10 (1988). "Whatever
term is used to describe the conclusion . . . the court must reach before granting [counsel's] request
[to withdraw], what is required is a determination that the appeal lacks any basis in law or fact." (1) 
Id. If such a determination is made, the appeals court may then grant counsel's motion to withdraw
and affirm the judgment below. See Anders, 386 U.S. at 744. "On the other hand, if [the appeals
court] finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior
to decision, afford the indigent the assistance of counsel to argue the appeal." Id. In such a case, we
must "remand the cause to the trial court so that new counsel may be appointed to brief the issues."
Bledsoe, 178 S.W.3d at 827 (citing Stafford, 813 S.W.2d at 511).


DISCUSSION

 In keeping with this Court's practice of addressing the pro se issues that have been
raised, we will briefly explain why Bishop's contentions lack "arguable merit." See Garner v. State,
300 S.W.3d 763, 767 (Tex. Crim. App. 2009). (2) Bishop claims that (1) the district court erred in
admitting evidence of extraneous offenses and refusing to grant a mistrial based on the admission
of such evidence; (2) the district court erred in admitting Bishop's statement to the police following
the invocation of his Fifth Amendment right to counsel; (3) the evidence is insufficient to support
a finding that a firearm was used or exhibited during the offense; (4) he was denied a fair trial due
to prosecutorial misconduct; (5) the jury charge impermissibly authorized a conviction for an
"irrelevant theory" of theft; (6) he was harmed by the district court's failure to comply with certain
procedural and charge requirements relating to evidence presented during the punishment hearing;
and (7) he was denied the effective assistance of counsel during trial and on appeal.


Admission of evidence relating to extraneous offenses

 Bishop first argues that the district court erred in admitting evidence of extraneous
offenses contained in State's Exhibit 14, the video-recorded statement he provided to police
following his arrest. In the statement, Bishop referred to a prior aggravated-assault conviction
from New Jersey and an alleged domestic-violence incident involving his girlfriend. Also in the
statement, Bishop claims knowledge of drug transactions and other burglaries and robberies
committed by his alleged accomplices.

 We are to review the trial court's admission of evidence for abuse of discretion.
Ramos v. State, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008). The trial court does not abuse its
discretion in admitting evidence unless its ruling lies "outside the zone of reasonable disagreement."
Walters v. State, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). Evidence of other crimes, wrongs
or acts is not admissible to prove the character of a person in order to show action in conformity
therewith. Tex. R. Evid. 404(b). It may, however, be admissible for other purposes. Id. Moreover,
the erroneous admission of evidence "must be disregarded" unless it affects "substantial rights." 
Tex. R. App. P. 44.2(b); see Motilla v. State, 78 S.W.3d 352, 355-56 (Tex. Crim. App. 2002). Under
this standard, an error is harmless if an appellate court has "fair assurance from an examination of the
record as a whole that the error did not influence the jury, or had but slight effect." Taylor v. State,
268 S.W.3d 571, 592 (Tex. Crim. App. 2008).

 Even if we were to find that the evidence should not have been admitted, we could not
conclude on this record that Bishop was harmed by its admission. Regarding Bishop's knowledge
of other crimes committed by the co-defendants, the district court's admission of the evidence was
conditioned upon the prosecutor eliciting testimony in front of the jury that Bishop himself was not
involved with those crimes. In compliance with the district court's condition, the prosecutor asked
the following question of the officer who had obtained Bishop's statement:


Q: As the judge was just [saying], there was some talk about other crimes that
[Bishop] would tell you about. Did you at any time think he, this defendant,
was involved in those crimes?


A: No, ma'am, I did not.



The district court also provided to the jury the following oral instruction to disregard any evidence
of extraneous offenses:


Members of the Jury, any evidence that you might have heard, if any, about any other
offense other than the offense charged is to be disregarded by you. The defendant
is on trial for the offense charged in the indictment. You're not to consider any
evidence, if there was any, of any other such matters in consideration of this case.



There is no indication in the record that the jury considered the extraneous-offense evidence despite
the court's instruction to disregard it or that the jury attributed to Bishop the other crimes committed
by his alleged accomplices. Accordingly, there is no basis in law or fact for concluding that Bishop
was harmed by the admission of the evidence. See Marshall v. State, 210 S.W.3d 618, 628-29
(Tex. Crim. App. 2006). For the same reason, there is no basis in law or fact for concluding that the
district court abused its discretion in declining to grant a mistrial based on the admission of the
evidence. See Young v. State, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009).

Invocation of right to counsel

 Bishop further complains that the entirety of his video-recorded statement should
have been excluded because the statement was obtained in violation of his Fifth Amendment right to
counsel. See U.S. Const. amend. V; Edwards v. Arizona, 451 U.S. 477, 483-85 (1981). In Edwards,
the Supreme Court held that a suspect who has "expressed his desire to deal with the police only
through counsel, is not subject to further interrogation by the authorities until counsel has been
made available to him, unless the accused himself initiates further communication, exchanges, or
conversations with the police." 451 U.S. at 484-85.

 The record reflects that when Bishop was brought before the magistrate for his initial
appearance, see Tex. Code Crim. Proc. Ann. art. 15.17 (West Supp. 2011), he filled out a written
form requesting the appointment of counsel. According to Bishop, this written request was sufficient
to invoke his right to counsel for Fifth Amendment purposes. In Bishop's view, his subsequent
interrogation, without counsel being present, violated that right. However, the court of criminal
appeals has recently explained that "a defendant's invocation of his right to counsel at his
Article 15.17 hearing says nothing about his possible invocation of his right to counsel during later
police-initiated custodial interrogation." Pecina v. State, No. PD-1095-10, 2012 Tex. Crim. App.
LEXIS 143, at *24-25 (Tex. Crim. App. Jan. 25, 2012). Instead, "an Article 15.17 initial appearance
and magistration marks the initiation of adversarial judicial proceedings in Texas and 'plainly
signals' the attachment of a defendant's Sixth Amendment right to counsel," which is separate from
a suspect's invocation of his Fifth Amendment right to counsel. See id. at *20-23. The court added,
"The magistration hearing is not an interrogation event." Id. at *25. Thus, there is no basis in law
or fact for concluding that Bishop invoked his Fifth Amendment right to counsel by requesting the
appointment of counsel at his initial appearance. Nor is there any basis in law or fact for concluding
on this record that Bishop's statement was obtained following a clear and unequivocal invocation
of his Fifth Amendment right to counsel. See Davis v. United States, 512 U.S. 452, 459 (1994)
(explaining that invocation of right to counsel must be clear and unambiguous); Davis v. State,
313 S.W.3d 317, 339 (Tex. Crim. App. 2010) ("To trigger law enforcement's duty to terminate the
interrogation, a suspect's request for counsel must be clear, and the police are not required to attempt
to clarify ambiguous remarks.").


Deadly-weapon finding

 Bishop next asserts that the evidence is insufficient to support the jury's deadly-weapon finding. According to Bishop, although there was evidence presented that a gun was stolen
during the burglary, "there is no indication the gun was used in a threatening manner or for any
purpose other than to steal it."

 In reviewing the sufficiency of the evidence, this Court considers all the evidence
in the light most favorable to the verdict and determines whether, based on that evidence and
reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319
(1979); Brooks v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). This standard gives full play
to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to
draw reasonable inferences from basic facts to ultimate facts. Jackson, 443 U.S. at 319; see Hooper
v. State, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007).

 When applied to the special issue regarding the use or exhibition of a deadly weapon
during the commission of a felony offense, the question facing this Court is whether a rational trier
of fact could find beyond a reasonable doubt that the mere possession of the deadly weapon
facilitated the associated felony. (3)
 Gale v. State, 998 S.W.2d 221, 224 (Tex. Crim. App. 1999); see
also Coleman v. State, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004). Any employment of a firearm
or other deadly weapon, even its simple possession, to facilitate the commission of another offense
constitutes a "use" of the weapon. Patterson v. State, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989). 

 In this case, the victim, Catherine Adair, provided testimony regarding the use
or exhibition of a deadly weapon. Adair testified that the burglars asked her if she had any guns in
the house. She told them that she had a "shotgun in the closet," and "they went and got it." Adair
was asked if she could "hear anything with regard to the shotgun," and she answered, "Yes." When
asked to describe what she had heard, Adair explained, "Well, it's 20 gauge. And growing up
around here, I'm sure a lot of people know about that. And so you have a lever that you pull back
to load your first shell. And when you click the button, it pops. And then when you put your others
[sic] in, they just click in the bottom." Adair was next asked if someone was "manipulating or
handling the shotgun." Again, Adair answered, "Yes," and added, "I could hear them." When asked
how what she had heard affected her, Adair replied, "I didn't know what they were going to do
with [the gun]." When asked if she was afraid for her life, she answered, "Yes, ma'am." From this
evidence, the jury could have reasonably inferred that Adair had heard the men loading the shotgun
and that by loading the shotgun in Adair's presence, the men were threatening her with its use. The
jury also could have reasonably inferred that by threatening Adair with the shotgun, the men were
facilitating the commission of the burglary by further scaring Adair into submission. Adair later
testified that the man who was holding her down on the bed (allegedly Bishop) said "[s]omething
to the effect of, 'Let's rod her' or 'I'm going to rod her.'" Although Adair did not know "for sure"
what this meant and whether the comment was "of a sexual nature," she "knew it didn't sound
good." A rational jury could have reasonably inferred from this testimony that Bishop had intended
to either sexually assault Adair with the gun or frighten her further into submission. Consequently,
the jury could have reasonably inferred from this and the other testimony summarized above that the
gun was used to facilitate the commission of the burglary--the handling and manipulation of the gun
in Adair's presence caused her to fear for her life and made her less likely to resist the men who were
robbing her. When the above evidence and all reasonable inferences to be drawn therefrom are
viewed in the light most favorable to the finding, there is no basis in law or fact for concluding that
the evidence was insufficient to support the deadly-weapon finding.


Alleged charge error

 Bishop also asserts that the jury charge authorized a conviction "based on an
irrelevant theory of theft." The "irrelevant theory," in Bishop's view, is his unexplained possession
of Adair's recently stolen property, some of which, the evidence tended to show, was found
in Bishop's possession. The unexplained possession of recently stolen property "is not positive
evidence of burglary or theft, but is merely a circumstance to be considered with other evidence
in determining guilt." Acy v. State, 618 S.W.2d 362, 365 (Tex. Crim. App. 1981). The court of
criminal appeals once held that "[w]hen proof of theft is supported only by the unexplained
possession of property recently stolen, a defendant is entitled to a charge on the law of circumstantial
evidence, if timely requested or if there is a timely objection to the court's jury instructions." Levi
v. State, 573 S.W.2d 784, 784-85 (Tex. Crim. App. 1978). However, the court of criminal appeals
later abolished this requirement, holding that such a charge was improper because it confused
the jury by creating different standards for direct and circumstantial evidence cases. See Hankins
v. State, 646 S.W.2d 191, 197 (Tex. Crim. App. 1983) (op. on reh'g); see also Roberts v. State,
672 S.W.2d 570, 580 (Tex. App.--Fort Worth 1984, no pet.) (holding that "[a]s the evidence of
possession may rise to no higher a level than a 'circumstance of guilt' and so considered on appellate
review, the jury should never be instructed on the 'inference or presumption' of guilt, and thereby
be told by the court what is the least evidence necessary for them to find guilt").

 As the State observes, Bishop's argument is misplaced, as no such instruction or
theory was provided in the charge. Instead, the jury was appropriately instructed on the applicable
law of the case as defined in the penal code. See Tex. Penal Code Ann. § 31.03 (West Supp. 2011).
There is no basis in law or fact for concluding otherwise. (4)


Prosecutorial misconduct

 Bishop further contends that the prosecutor engaged in misconduct during trial
by (1) arguing outside the record that Adair, who was unable to visually identify Bishop as the
perpetrator, (5) was able to identify Bishop's voice in an audio recording that was never admitted into
evidence, and (2) attempting to elicit evidence that the other alleged burglars named Bishop as their
accomplice. Regarding the first complaint, although defense counsel objected to the prosecutor's
argument (and the district court twice admonished the prosecutor in the presence of the jury to stay
on the record), counsel never obtained a ruling on his objection from the district court. Nor did
counsel request an instruction to disregard the prosecutor's argument or move for a mistrial.
Accordingly, Bishop failed to preserve error on this point. See Tex. R. App. P. 33.1(a); Estrada
v. State, 313 S.W.3d 274, 303 (Tex. Crim. App. 2010); Cockrell v. State, 933 S.W.2d 73, 89
(Tex. Crim. App. 1996). Consequently, there is no basis in law or fact for reversing Bishop's
conviction on that ground. Regarding the second complaint, the record reflects that the district court
sustained defense counsel's objections to the prosecutor's attempts to elicit evidence relating
to the statements of the co-defendants. As the prosecutor's efforts to elicit the testimony were
unsuccessful, there is no basis in law or fact for concluding that Bishop was harmed by the
prosecutor's failed attempts to admit the evidence.


Punishment issues

 Bishop asserts that there were two non-frivolous issues that arose during punishment.
First, Bishop claims that he was egregiously harmed by the district court's failure to instruct the
jury that it may not consider evidence of extraneous offenses in assessing punishment unless it
was satisfied beyond a reasonable doubt that such offenses were attributable to the defendant. See
Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a) (West Supp. 2011); Fields v. State, 1 S.W.3d 687, 688
(Tex. Crim. App. 1999). Second, Bishop contends that he was harmed by the district court's failure
to comply with the procedural requirements relating to enhancement allegations. See Tex. Code
Crim. Proc. Ann. art. 36.01 (West 2007). Specifically, the record reflects that the district court failed
to read the enhancement allegation to the jury and failed to receive Bishop's plea to the allegation.

 Regarding the failure of the district court to instruct the jury on the State's burden
of proof regarding extraneous-offense evidence, such failure is charge error. See Huizar v. State,
12 S.W.3d 479, 484-85 (Tex. Crim. App. 2000). Accordingly, because Bishop did not object to the
error during trial, he is not entitled to reversal unless the record reflects that he suffered egregious
harm. See Almanza v. State, 686 S.W.2d 157, 172 (Tex. Crim. App. 1985) (op. on reh'g). In other
words, the record must show that Bishop was deprived of a fair and impartial trial. Id. at 171. The
harm to the accused must be actual, not merely theoretical. Id. at 174. "Egregious harm is a difficult
standard to prove and such a determination must be done on a case-by-case basis." Hutch v. State,
922 S.W.2d 166, 171 (Tex. Crim. App. 1996). Errors that result in egregious harm affect the very
basis of the case, deprive the defendant of a valuable right, vitally affect a defensive theory, or make
the State's case clearly and significantly more persuasive. Taylor v. State, 332 S.W.3d 483, 490
(Tex. Crim. App. 2011).

 Having reviewed the entire record, including the record of the punishment hearing,
we find no basis in law or fact for concluding that Bishop suffered egregious harm. The extraneous-offense evidence offered by the State at the punishment hearing was strong. In fact, much of the
evidence, including the evidence of Bishop's prior conviction for aggravated assault, was largely
undisputed. Thus, the jury could have found beyond a reasonable doubt that Bishop had committed
the extraneous offenses even without the instruction. See Graves v. State, 310 S.W.3d 924, 930
(Tex. App.--Beaumont 2010, pet. ref'd). We also observe that the charged offense, which the jury
had already found beyond a reasonable doubt that Bishop had committed, was a violent home
invasion committed at night against a woman who was assaulted while she slept, held down
and essentially blindfolded on her bed, and threatened with a firearm. The victim provided vivid
testimony of how the ordeal had terrified her and continued to traumatize her to this day. In light
of this and other evidence presented during trial, we cannot conclude that the evidence concerning
the extraneous offenses made the case for punishment clearly and significantly more persuasive. See
Martinez v. State, 313 S.W.3d 358, 368 (Tex. App.--Houston [1st Dist.] 2009, pet. ref'd). On this
record, there is no basis in law or fact for concluding that the failure of the district court to instruct
the jury on the State's burden of proof regarding the extraneous-offense evidence affected the very
basis of the case, deprived the defendant of a valuable right, vitally affected a defensive theory, or
made the State's case for punishment clearly and significantly more persuasive.

 Regarding the district court's failure to comply with the procedural requirements
of article 36.01, Bishop failed to object during trial and thus the error was not preserved for our
review. See Tex. R. App. P. 33.1(a). Accordingly, there is no basis in law or fact for reversing
Bishop's punishment on that ground. See Cantu v. State, 939 S.W.2d 627, 646 (Tex. Crim. App.
1997); Lee v. State, 239 S.W.3d 873, 876-77 (Tex. App.--Waco 2007, pet. ref'd); Hardin v. State,
951 S.W.2d 208, 211 (Tex. App.--Houston [14th Dist.] 1997, no pet.); see also Yeakley v. State,
No. 03-09-00584-CR, 2011 Tex. App. LEXIS 1429, at *16-21 (Tex. App.--Austin Feb. 25, 2011,
pet. dism'd, untimely filed) ("[D]efendants are not excused from preserving error at the trial court
when there is a violation of article 36.01.").


Ineffective assistance of counsel

 Finally, Bishop argues that trial and appellate counsel were ineffective. Bishop
asserts that trial counsel was ineffective by failing to request an instructed verdict at the conclusion
of the first trial. Bishop also claims that appellate counsel was ineffective by filing an Anders brief
that, in Bishop's view, "misquoted the record."

 To establish that he received ineffective assistance of counsel, Bishop must show
that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is
a reasonable probability that, but for counsel's error, the result of the proceeding would have been
different. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Thus, the "benchmark for
judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper
functioning of the adversarial process that the trial cannot be relied on as having produced a just
result." Id. at 686.

 On the record before us, without knowing the reasons for counsel's decision to not
request an instructed verdict, we cannot conclude that trial counsel's performance fell below an
objective standard of reasonableness. See Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim.
App. 2005) (explaining that "where counsel's reasons for failing to do something do not appear
in the record," "an appellate court should not find deficient performance unless the challenged
conduct was 'so outrageous that no competent attorney would have engaged in it.'") (quoting Garcia
v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)); see also Gill v. State, 111 S.W.3d 211, 217
(Tex. App.--Texarkana 2007, no pet.) (concluding that when State presented more than scintilla of
evidence in its case-in-chief that would have supported guilty verdict, defense counsel had no ground
on which to move for instructed verdict, and thus failure to do so did not render assistance
ineffective); McGarity v. State, 5 S.W.3d 223, 229 (Tex. App.--San Antonio 1999, no pet.) ("[T]he
fact that the defense attorney may or could have moved for the directed verdict on the possibility
of its being granted does not show that trial counsel's assistance was ineffective."). Nor can we
conclude on this record that if trial counsel had requested an instructed verdict, there is a reasonable
probability that the district court would have granted the request. Accordingly, there is no basis in
law or fact for concluding that trial counsel was ineffective under either Strickland prong.

 As for the claims regarding appellate counsel's Anders brief, because we have already
concluded that the brief complies with the requirements of Anders, we cannot conclude that
counsel's performance fell below an objective standard of reasonableness. See Stafford, 813 S.W.2d
at 509-10. Additionally, because we have reviewed the record independent of counsel's Anders
brief, we cannot conclude that there is a reasonable probability that, but for the alleged "misquoting
of the record" in counsel's Anders brief, the result of this appeal would have been different. Thus,
there is no basis in law or fact for us to conclude that Bishop was denied effective assistance of
appellate counsel.

 Having reviewed the record, counsel's brief, and Bishop's pro se briefs, we agree with
counsel that the appeal is wholly frivolous. See Garner, 300 S.W.3d at 766; Bledsoe, 178 S.W.3d
at 826-27. Counsel's motion to withdraw is granted.


CONCLUSION

 We affirm the judgment of the district court.


 __________________________________________

 Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed: April 18, 2012

Do Not Publish
1. The Supreme Court has also described a frivolous argument as one that "cannot
conceivably persuade the court." McCoy v. Court of Appeals, 486 U.S. 429, 436 (1988) (quoting
United States v. Edwards, 777 F.2d 364, 365 (7th Cir. 1985)).
2. See also Hernandez v. State, No. 03-11-00198-CR, 2011 Tex. App. LEXIS 9784, at *4
(Tex. App.--Austin Dec. 14, 2011, no pet.) (mem. op., not designated for publication); Pulliam
v. State, No. 03-10-00737-CR, 2011 Tex. App. LEXIS 6976, at *2 (Tex. App.--Austin Aug. 26,
2011, pet. ref'd) (mem. op., not designated for publication); Diaz v. State, No. 03-10-00267-CR,
2011 Tex. App. LEXIS 2667, at *4-6 (Tex. App.--Austin Apr. 7, 2011, pet. ref'd) (mem. op.,
not designated for publication).
3. It is important to note that the deadly-weapon portion of the jury charge included an
instruction on the law of parties. See Tex. Penal Code Ann. § 7.01(a) (West 2011). Accordingly,
even if Bishop himself did not use or exhibit a firearm during the offense, if there is sufficient
evidence that one of his accomplices did, the use or exhibition of the deadly weapon can be
attributed to Bishop. See Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp. 2011).

4. We also note that even if there had been error in the charge, Bishop did not object to it
during trial. Accordingly, to be entitled to reversal, the record would have to reflect that Bishop
was egregiously harmed by the error. See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App.
1985) (op. on reh'g) (test for egregious harm is whether defendant has been denied fair and impartial
trial). On this record, there is no basis in law or fact for concluding that such harm occurred.
5. Adair testified that during the burglary, something was placed over her head so that she was
unable to see anything.